(No. 29625.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* COSMO DEL PRETE, Plaintiff in Error.

*Opinion filed Sept. 18, 1946—Rehearing denied November 18, 1946.*

ORR, LEWIS & ORR, (WARREN H. ORR, WALLACE W. ORR, and HASKELL F. LAMM, of counsel,) all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and C. D. PEMBERTON, all of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

In January, 1935, plaintiff in error, Cosmo Del Preté, was convicted of the crime of armed robbery by a jury in the criminal court of Cook county. He was also found guilty under the Habitual Criminal Act and sentenced to the penitentiary for his natural life. On writ of error to this court, the cause was reversed and remanded. *People v. Del Prete,* 364 Ill. 376.

Upon a second trial in January, 1937, he was again convicted of armed robbery and found guilty under the Habitual Criminal Act. Motions for new trial and in arrest of judgment were overruled and he was sentenced to the penitentiary for his natural life. A stipulation shows that the defendant previously, on July 22, 1927, pleaded guilty and was sentenced to imprisonment for grand larceny. He has sued out this writ of error to review the judgment entered on the second trial.

The former judgment was reversed largely because of the prejudicial cross-examination by the State's Attorney who was permitted to examine the defendant in detail about a former conviction and because the cross-examination of the prosecuting witness concerning identification was unduly limited and restricted. It was the conclusion of this court that upon another trial there should be a greater latitude of cross-examination permitted without unnecessary and improper interruptions.

Because of the errors assigned it is necessary to recite the main facts shown in the record. The testimony of the complaining witness, John Korenevich, shows that on September 7, 1934, he made a trip to the bank of Napoli, located on the corner of Halsted and Forquer streets in Chicago, for the purpose of cashing some checks. He left the bank with $92 in cash, got in his car and drove west. Two men in a Ford car pulled up alongside of him, and one of the men jumped on the running board of his car and ordered him to back up and then turn into an adjacent

alley and stop. The intruder then got into the back seat of the Korenevich car and at that time held a revolver in one hand, and with the other held a handkerchief over the lower part of his face. The man gave Korenevich a number of oral directions and, after the car was parked in the alley, climbed up in the front seat, at the same time removing the handkerchief from his face and placing it in his pocket. The robber then searched Korenevich's pockets, pistol in one hand, removed his money and completed the robbery by taking away the sum of $92. He told Korenevich to wait there in the alley for three or four minutes, which he did, and then went direct to the police station. Korenevich described the robber as a man about 5 feet 10 inches in height and weighing about 175 pounds; that he was wearing a dark suit and a hat; that he saw the man with his face uncovered for a period of three or four minutes and that the robbery occurred in the daylight a few minutes after four o'clock in the afternoon.

Korenevich further testified that just a week later, on September 14, he saw the defendant standing at the northwest corner of Halsted and Taylor streets and he immediately called up the police, met two officers in a squad car, identified the defendant as the man who had robbed him and caused his arrest. At the police station he again identified the defendant and the next day signed the formal complaint.

The defendant, Cosmo Del Prete, took the stand and told of his whereabouts on September 7. He said he left home about a quarter of ten in the morning and went downtown for a physical examination, leaving the building a little after 12 o'clock noon; that for a time he watched a fire at the corner of Wabash and Roosevelt; that he then walked down Michigan avenue because he had nothing to do and it was his day off; that he turned west on Madison street and about 2:30 P.M. went to the Palace theater and sawing a moving picture show, remain-

ing there until about five o'clock and then returned to his home.

A sister of the defendant, Mary Ferrarra, and her husband testified that they called upon Korenevich in the fall of 1936, seeking to have him write the Governor and the Board of Pardons and Paroles. They told him Cosmo's mother had died and asked him to write a letter and say that he was not sure that Cosmo was the man who held him up. They further testified that Korenevich told them he was not sure but he was frightened of what they would do to him; that he had seen two men on the street since then that looked like the defendant and he did not want a guilty conscience. This testimony was emphatically denied by Korenevich. In rebuttal he testified that he had never said to anyone that he was not sure that the defendant held him up.

One of the main contentions relied upon by the plaintiff in error is that the State has not identified defendant as the person who committed the crime charged, and has failed to meet its burden of proving identification in the degree required by law. Korenevich definitely and positively designated the defendant as the man who robbed him on September 7, 1934. He had the opportunity of observing him at close range for three or four minutes during the time the man sat in the car seat with him and while he was being robbed; he recognized him a week later when he saw him on the corner of Halsted and Taylor streets. He pointed him out to the officers and asked for his arrest; he identified him at the police station and on each and every occasion he has stated in positive terms that Del Prete was the man who robbed him. The plaintiff in error argues many things the witness did not see and did not cover in his testimony rather than what was apparent. He says that because Korenevich did not notice the man's complexion, his facial features, distinguishing characteristics of the eyes, the face, the shape of the nose

and other physical features or mannerisms, he must have had a blurred memory of what the man looked like. In the cross-examination of the witness, none of these questions were asked. After asking Korenevich about the color of the man's suit, whether or not he wore a tie, whether he had a sweater on under his coat and about his shirt, the cross-examination on the question of identity ceased. There was no objection made to the cross-examination and no limitation or restriction imposed thereon.

On the question of sufficiency of identification, plaintiff in error cites a large number of Illinois cases. A few of those primarily relied upon are, we think, easily distinguished from the present case. In *People* v. *Gold,* 361 Ill. 23, it was said: "No man should be deprived of his liberty unless his identification as the party charged with a crime is under such circumstances and with such positiveness that there can be no reasonable doubt of its correctness," but the facts there were vastly different from this case, and the court said: "It is apparent that Levitus and Lipsitz had no opportunity to study or register more than fleeting impressions of the thief's face. * * * no matter how honest Levitus and Lipsitz were in their effort to identify defendant as the thief, the circumstances offered great opportunity for mistake." In addition the defendant in that case had a perfect alibi proved by undisputed evidence and witnesses of unquestioned character.

In *People* v. *Cramer,* 298 Ill. 509, also relied upon by defendant, the same principle is announced but the facts again are decidedly different. In that case a robbery was committed in a tavern late on Saturday evening. Five men participated in the crime. On the following Monday evening the tavern keeper with two other men went to the police station for the purpose of identifying the defendant, Cramer. The officer brought Cramer out and made him go through different things and asked him many questions in the presence of the tavern keeper and his friends.

They were asked by the officer whether they could identify Cramer as one of the defendants. They did not identify him then but told the officer they would be back the next day, and then did go back the next day and identified him as one of the men in the saloon at the time of the robbery. Again the defendant had a convincing alibi. He gave a complete story of his whereabouts on the Saturday evening in question and supported it with the testimony of five reliable witnesses. This court said: "In the argument for the People it is stated that the witnesses for the defendant were reputable persons, and no fact or circumstance is pointed out or appears in the record tending in any way to discredit them. They had no relation with the defendant and could not be affected directly or indirectly by the verdict." It was further noted in that case that the witnesses for the People failed to identify the defendant at the first visit to the police station.

In the present case we have no similar situation. The only evidence as to the whereabouts of the defendant at the time of the holdup is his own testimony on the stand, which is not entirely convincing. The other cases cited by plaintiff in error, *People* v. *Gurdak,* 357 Ill. 516; *People* v. *Sanders,* 357 Ill. 610; *People* v. *Peck,* 358 Ill. 642, and *People* v. *Botulinski,* 383 Ill. 608, are just as readily distinguished from the case here under review.

Here the testimony of the prosecuting witness was positive and the identification complete, it was competent and admissible and the weight to be given it was a question for the jury in connection with all the other circumstances and evidence in the case. (*People* v. *Jennings,* 252 Ill. 534; *People* v. *Maciejewski,* 294 Ill. 390.) We do not find from reading the complete record that the identification of the defendant was either doubtful, vague or uncertain. This court has often stated that: "The fact that there was only one witness testifying to the commission of the crime, and that he was contradicted by the

defendant, is not alone sufficient to justify a reversal." *People* v. *Zurek*, 277 Ill. 621; *People* v. *Surace*, 295 Ill. 604; *People* v. *Fortino*, 356 Ill. 415.

Counsel for defendant insists that the method used to impeach the credibility of defendant as a witness in his own behalf was prejudicial error. At the time of the previous conviction for grand larceny in 1927, there were two indictments, numbers 42787 and 42786, each for burglary. The defendant pleaded guilty to grand larceny in each case. After the plea of guilty and conviction on each indictment, exact sentences were pronounced in each case. The indictment in case No. 42787 was charged in the habitual count of the indictment in the present case. The State offered the record of conviction in case No. 42786 in evidence to attack the credibility of defendant as a witness. The record of the convictions in both cases was admitted under the stipulation of counsel. Plaintiff in error now contends that this method was prejudicial and was an attempt by the State to try defendant for two crimes at once. There was no attempt to cross-examine the defendant on anything that happened in his former convictions. Both convictions were admitted in evidence by stipulation, one to prove the allegations of the habitual count and the other to attack the credibility of the defendant as a witness, as the State had a right to do under section 6 of division XIII of the Criminal Code. (Ill. Rev. Stat. 1945, chap. 38, par. 734.) We do not find any prejudicial error in this procedure.

Plaintiff in error also complains of the closing argument of the counsel for the State and insists it was prejudicial and intended to inflame and arouse the passions of the jury. The argument is set forth almost verbatim in the abstract, and excerpts are quoted in the brief of defendant, showing references to the fact that defendant had served time in the penitentiary and had been theretofore convicted. Almost the first answer made by defend-

ant in his direct examination was that he had been incarcerated in the Joliet penitentiary for the past two years, that he was serving a term for life and that the Supreme Court granted him a new trial. In his cross-examination he voluntarily talked about discussions with the fellows in his tier at the penitentiary. With these statements of the defendant and the stipulation concerning former conviction in the record, we do not believe the argument complained of was prejudicial error.

Plaintiff in error in his brief has assumed that the same errors committed in the first conviction have been repeated here and that the issues are substantially the same as those presented on the former review of this case. However, a careful examination of the record does not fully support that statement. The reasons given for reversal in the prior opinion are all absent in this record. The cross-examination of the complaining witness by counsel for the defendant was completed almost wholly without objection and without any interruptions or improper remarks on the part of the State's Attorney. A full latitude of cross-examination was permitted concerning the question of identification. Neither was there any prejudicial cross-examination made concerning the details of defendant's former conviction. So far as the record discloses the rulings of the trial judge were carefully made and on all questions of evidence were fair and impartial to both sides.

We cannot say from a careful consideration of the whole testimony that there is a reasonable and well-founded doubt of the guilt of the accused, and the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*