THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL HOLTZ *et al.,* Defendants-Appellants.

(Nos. 57256, 57289 cons.;

First District (5th Division)—May 17, 1974.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr. and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Co-defendants, Lunsford and Holtz, were each indicted on two counts of involuntary manslaughter arising from an automobile accident. In the same indictment Lunsford was charged with driving under the influence of intoxicating liquor and driving too fast for conditions in violation of the Illinois Vehicle Code and driving to the left of the center line of a roadway in violation of the traffic regulations of the City of Chicago. Both

co-defendants waived trial by jury. Holtz was convicted on both counts of involuntary manslaughter and sentenced to concurrent terms of from 2 to 10 years. Lunsford was convicted on both counts of involuntary manslaughter and was similarly sentenced to concurrent terms of from two to ten years. He was also convicted of driving under the influence of intoxicating liquor for which he received a concurrent sentence of one year and of driving too fast for conditions for which he was fined $100.

On appeal defendants contend that (1) the indictment under which they were charged is void because it was predicated upon conflicting and mutually exclusive allegations; (2) the court below erred in failing to grant defense motions for severance; (3) the State failed to prove Lunsford guilty beyond a reasonable doubt of the traffic violations; and (4) Holtz's conviction should be reversed because the State failed to rebut beyond a reasonable doubt his defense of self-defense.[1]

At approximately 2:30 A.M. on October 1, 1970, an automobile driven by defendant Lunsford crossed the center line of the 5100 block of West Belmont Avenue in Chicago and crashed head-on into a car driven by James Morano, Jr. Both Morano and his wife, who was riding with him, were killed. Co-defendant Holtz was a passenger in the Lunsford auto.

At trial Patricia Jurczenko testified as a witness for the State that she was with the Moranos during the early morning hours of October 1. They were helping Tony DeBellis open a new place of business. When they had finished, they decided to get something to eat at a snack shop on Belmont Avenue. The Moranos took their own car; she followed in an auto driven by DeBellis. The Morano auto proceeded west on Belmont at approximately 30 miles per hour. It never crossed the center line of the roadway. She noticed another car approach from the west, swerve across the center line of the street and strike the Morano vehicle head-on. She estimated that the eastbound car was going twice as fast as Morano's. After the collision, she approached the two vehicles and saw Lunsford roll onto the street and sit on the curb. She asked him why he had done it. Lunsford replied to the effect that "he is crazy, he is goofy." She did not know of whom Lunsford was speaking. Later, at the hospital, she saw both co-defendants. Holtz was speaking loudly; he did not make any sense. At one point he said, "I want some water, I know I killed two people. Get these handcuffs off of me." She was of the

---

[1] In a supplemental brief defendants have contended that they were denied equal protection of the law due to the fact that the State had unbridled discretion to charge them with involuntary manslaughter (Ill. Rev. Stat. 1971, ch. 38, par. 9—3(a)), a felony or reckless homicide (Ill. Rev. Stat. 1971, ch. 38, par. 9—3(b)) conviction of which may be treated as a misdemeanor. The record reveals, however, that defendants failed to raise this point at any earlier stage of the proceedings and consequently it has been waived. *People v. Neal*, 15 Ill.App.3d 940, 306 N.E.2d 43.

opinion that Holtz was drunk. She also thought that Lunsford was under the influence of alcohol though not as drunk as Holtz. She was able to smell alcohol on Lunsford's breath. On cross-examination Mrs. Jurczenko admitted that when she appeared before the grand jury she testified that she "couldn't estimate the exact speed" of the car that struck the Morano vehicle.

Tony DeBellis testified as a witness for the State that on the night in question the Moranos and Mrs. Jurczenko assisted him in opening a new business. When they had finished, they decided to have breakfast. The Moranos took their own car; he followed, accompanied by Mrs. Jurczenko and a third individual. He estimated the speed of the Morano vehicle to be about 25 miles per hour. They were traveling west on Belmont when he noticed an eastbound Buick cross the center line and crash head-on into the Moranos' car. He estimated that both vehicles traveled "the same amount of distance" from the time he first noticed the Buick. After the crash he attempted to help the Moranos. He saw one person get out of the driver's side of the Buick yelling, "The guy is crazy, he is crazy." DeBellis identified this individual as Lunsford. He identified a second person whom he also saw at the crash scene as Holtz. He later observed Holtz at the hospital. Holtz was yelling that his handcuffs should be removed, that he wanted some water, and that he had killed some people.

Traffic Patrolman Glenn Radzik testified as a witness for the State that he arrived at the scene of the collision at approximately 2:39 A.M. He saw Lunsford sitting on the curb and heard him make "a loud statement in regard to Mr. Holtz, that he was crazy; what did he do, why did he do it and other statements which were irrational at the time." Radzik observed Holtz walking around in circles and heard him say, "My God, there is two people dead." Based on his observations of both defendants at the crash scene, he was of the opinion that Holtz was extremely drunk and that Lunsford was only moderately intoxicated. The smell of alcohol emanated from Lunsford's body. He was making irrational statements and Radzik observed a "swaying in his walk, unsure turning and unsure actions." At the hospital he interviewed Holtz who told him that Lunsford and Luppke, a third individual in the Buick, had threatened to kill him, that he got scared and fought for the steering wheel and that in the course of the struggle the car swerved to the left and crashed. Holtz said that Lunsford and Luppke were going to kill him with a knife or a gun. However, an immediate search of the accident scene produced no weapons. Holtz signed the following statement which was read into evidence:

"We went into a bar and I met two men. We went to a few

bars. At the last one we ran out of money. They then took me out of the bar; forced me into car; stating we got a contract on you to kill you. I then panicked and I jumped over middle of seat. I pushed steering wheel to left to crash car. I tried to crash car, but not to kill them people."

Radzik also interviewed Lunsford at the hospital and he made a signed statement part of which was read into evidence:

"I was eastbound on Belmont and I was taking Mr. Holtz home to Ainslie Hotel. He was talking kind of goofy all night, when all of a sudden he jumped over the seat and grabbed the steering wheel and turned it to the left, causing my car to go into the westbound lane and hit an oncoming car."

Lunsford estimated his speed to be between 20 and 25 miles per hour. When Radzik asked him if he had been drinking, he responded, "No." Radzik further testified that the steering wheel of Lunsford's car was broken and that the windshield was smashed on the left side. He believed that this damage was caused by Lunsford's head hitting the windshield. At the hospital Lunsford was treated for a bump on his head. Radzik had investigated other accidents where the victims staggered or otherwise acted abnormally even though there was no indication that they had consumed alcohol.

Lunsford called several witnesses to testify on his behalf. William Caponigro, a bartender at the Bob Gross Bar, testified that Lunsford was at the bar on September 30, 1970, from 7:30 P.M. to 11 P.M. During this time Lunsford drank only Seven-Up; he consumed no intoxicants. While at the bar Lunsford played pool with Holtz who had been there since 5 P.M. drinking beer. At 11 he refused to serve Holtz any more beer since Holtz was acting boisterously. Lunsford and Holtz left the bar together.

Edward Cumpton testified that he was at the Bob Gross Bar on the evening of September 30. While he was there, he spoke with Lunsford. Lunsford, who was drinking Seven-Up, was not intoxicated; Holtz, however, definitely was drunk.

Phillip Luppke testified that he met Lunsford and Holtz at a bar called the Stretch-Inn a little before 2 on the night in question. He had known Lunsford for about 2 years but had never before met Holtz. Both defendants were sitting at the bar; he did not see what they were drinking. At 2 A.M. when the Stretch-Inn closed, he accompanied Lunsford and Holtz to another bar called the Clown's Alley, where he ordered a beer and Lunsford a mixed drink. The bartender refused to serve Holtz. The bartender asked Lunsford and him to take Holtz out of the bar. They decided to drop Holtz off at his home and then go to another bar.

Holtz, who was in the back seat of Lunsford's car, told them he didn't want to go home but rather desired to go to a party. Holtz then suddenly "grabbed the wheel and pulled and hit another car." Lunsford was driving at between 20 and 25 miles per hour. Neither he nor Lunsford was carrying weapons nor was there a gun or knife in the car. Luppke further testified that he said nothing to Holtz that would cause him to be afraid.

Marilyn Barton testified that on the night in question she was working as a barmaid at the Stretch-Inn. In her opinion Lunsford was not intoxicated.

Lunsford's wife testified that when she saw him at the Northwest Hospital after the collision she did not believe him to be intoxicated.

Lunsford testified on his own behalf that he was at the Bob Gross Bar from 7:30 to 11:30 on the night of September 30, drinking only Seven-Up. While there he was introduced to Holtz by Holtz's uncle. Holtz had been drinking beer. When he lost to Holtz at pool, he bought him mixed drinks. Because Holtz "was getting loud and acting funny," the bartender refused to serve him more drinks. They decided to go to another bar, the Stretch-Inn, and arrived there at midnight. He continued to drink only Seven-Up. Holtz, who ordered mixed drinks, continued to act "a little wild." They met Luppke at about 1 and remained at the Stretch-Inn until closing time. The three of them then went to another bar, the Clown's Alley, where he ordered a mixed drink. However, when the bartender refused to serve Holtz, Lunsford took only one sip of it and then passed it to Holtz. When Holtz claimed that he had no money, there was an argument over who would pay for the drinks. They then decided to take Holtz home. On the way to Holtz's house Holtz sat in the back seat, drunk and mumbling to himself. Then, "all of a sudden out of nowhere he jumped up out of the back seat and turned the steering wheel" causing the car to crash. Lunsford testified that he suffered injuries to both knees and a cut on his head. There was little traffic at the time of the accident and the street conditions were dry. He was traveling at a speed of from 25 to 30 miles per hour. He denied that either he or Luppke made any threats on Holtz or that they were carrying any weapons.

Holtz testified on his own behalf that he arrived at the Bob Gross Bar at 6:30 P.M. on September 30. While there he met Lunsford. He could not recall what Lunsford was drinking; he was drinking beer and was "under the influence" by the time they left to go to the Stretch-Inn. He could not recall whether Lunsford had anything to drink at the second bar. They met Luppke and the three of them went to the Clown's Alley. When he discovered that he had no money to pay for drinks,

Lunsford took his watch. Lunsford also forced a drink on him that he didn't want. Although he did not desire to go, Lunsford told him, "come on, let's not cause trouble" and they left the Clown's Alley. With Luppke and Lunsford gripping his arms, they walked to the car. At the car they frisked him and Lunsford told him that they were going to "take him for a ride." After they got in the car, Lunsford turned and said, "We got a contract on you, Carl." Luppke was holding a knife. He could recall no more of the events preceding the crash. On cross-examination he admitted that "[i]t is possible I caused the accident by grabbing the steering wheel. It is probable."

No other witnesses testified on Holtz's behalf.

The State called Walter Good, the owner of the Clown's Alley, as a rebuttal witness. He testified that he told the bartender not to serve either defendant bcause they were loud and vulgar. However, he was not of the opinion that Lunsford was under the influence of intoxicating beverages.

OPINION

It is defendants' first contention that the indictment under which they were charged is void because it is predicated upon conflicting and mutually exclusive allegations. They argue that the State cannot both claim that the reckless manner in which an allegedly intoxicated Lunsford was operating the auto was the cause of the fatal collision and charge, in the same indictment, that Holtz's grabbing the steering wheel rendered him equally culpable. These allegations, they assert, are inconsistent and repugnant and thus the indictment predicated upon them cannot support their conviction.

■■ It is well established that two defendants may be charged in the same indictment where they commit the same offense as principals. (*People v. Tanthorey*, 404 Ill. 520, 89 N.E.2d 403.) It is the State's theory of the instant case that Holtz and Lunsford are both accountable for the deaths of the Moranos; specifically, that the immediate cause of the collision was both Holtz's grabbing the steering wheel which forced the car across the center line and Lunsford's drunken condition coupled with the excessive speed at which he was driving preventing him from regaining control of the auto before it crashed. We do not find these allegations to be inconsistent and, consequently, hold that it was not improper to charge both Holtz and Lunsford in the same indictment.

■■ We believe, however, that the State failed to prove beyond a reasonable doubt that Lunsford was guilty of any of the crimes with which he was charged. The trial court found Lunsford guilty of driving too fast for conditions in violation of section 11—601(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 11—601(a)). The evidence indi-

cates that Lunsford was not driving at a rate of speed in excess of the posted limit.[2] In addition, the State failed to introduce any evidence regarding the volume of traffic, weather conditions or road conditions at the time of the collision. We, therefore, find that it did prove essential elements of the offense. See *People v. Mindock,* 128 Ill.App.2d 196, 261 N.E.2d 549.

■■ Lunsford was also convicted of a second traffic offense, driving while under the influence of an intoxicating beverage. (Ill. Rev. Stat. 1969, ch. 95½, par. 11—501.) Evidence was introduced that there was the smell of alcohol on his breath immediately after the collision and that he was unsteady in his movements. The only inference that may be drawn from the smell of alcohol emanating from Lunsford is that he consumed some form of alcoholic beverage. (*Cf. People v. Taylor,* 110 Ill.App.2d 81, 249 N.E.2d 127.) Lunsford testified that immediately prior to the crash he had a sip of a mixed drink. However, there is no evidence that he had imbibed intoxicants at any other time on the night in question. Similarly, the fact that his movements were unsteady immediately after the collision does not "rationally support a charge of intoxication." (*People v. Clark,* 123 Ill.App.2d 41, 45, 259 N.E.2d 636; see also *People v. Fenelon,* 14 Ill.App.3d 622, 303 N.E.2d 38; *People v. Wheatley,* 4 Ill.App.3d 1088, 283 N.E.2d 279.) The record reveals that Lunsford needed emergency treatment for an injury he incurred in the collision when his head struck the windshield. Other evidence indicates that he also injured his knees. We note that Officer Radzik testified that as a result of their injuries, accident victims often act abnormally despite the fact that they are not drunk. We, therefore, find that Lunsford was not proven guilty beyond a reasonable doubt of driving while under the influence of an intoxicating beverage.

■■ To prove Lunsford guilty of involuntary manslaughter, the State was required to demonstrate that he operated his car in so reckless a manner that it was likely to cause death. (*Cf. People v. Potter,* 5 Ill.2d 365, 125 N.E.2d 510; *People v. Clark,* 130 Ill.App.2d 558, 265 N.E.2d 191.) In view of the State's failure to prove him guilty beyond a reasonable doubt of any of the traffic offenses with which he was charged, we find that Lunsford's failure to anticipate Holtz's sudden seizure of the

---

[2] Patricia Jurczenko did testify that Lunsford's vehicle was being driven at a speed twice that of the car driven by Morano which she estimated to be 25 to 30 miles per hour. However, this testimony was contradicted by all other witnesses who commented on the matter and, moreover, Ms. Jurczenko was impeached by her testimony before the grand jury to the effect that she could not estimate the speed of the Lunsford auto.

steering wheel did not constitute conduct so reckless as to justify a conviction for involuntary manslaughter. We reverse.

Defendants have asserted that the court below erred in denying their motions for separate trials. Due to our reversal of Lunsford's convictions we need consider this contention solely with regard to Holtz.

■■ It is argued that since defendants raised "mutually exclusive" defenses, the failure of the trial court to order a severance denied them a fair trial. The general rule is that those indicted jointly for the commission of an offense are to be tried together, and that the granting of a severance lies within the sound discretion of the trial court. The primary question is whether the defenses of the several defendants are so antagonistic that a fair trial can be assured only by a severance. (*People v. Henderson*, 37 Ill.2d 489, 229 N.E.2d 519; *People v. Brooks*, 51 Ill.2d 156, 281 N.E.2d 326.) The defenses of Holtz and Lunsford were not antagonistic. Lunsford claimed that the sole cause of the collision was Holtz's grabbing the steering wheel of his car. This Holtz does not dispute. Indeed, with the exception of the alleged threats made on Holtz's life by Lunsford and Luppke, both defendants' factual account of the events preceding the fatal crash are in substantial agreement. We, therefore, find that due to the compatible nature of their defenses, the denial of defendants' severance motions was not an abuse of the trial court's discretion.

■■ Holtz next contends that he was denied a fair trial due to the introduction of Lunsford's post-arrest statement to Officer Radzik. He relies chiefly on *Bruton v. United States*, 391 U.S. 123, wherein it was held that under certain circumstances the confrontation clause on the sixth amendment is violated when a co-defendant's confession implicating the defendant is placed before a jury at their joint trial. (See also *Roberts v. Russell*, 392 U.S. 293.) It has been recognized, however, that the *Bruton* rule is limited to instances where the co-defendant is unavailable for cross-examination. (*People v. Brooks*; see also *Nelson v. O'Neil*, 402 U.S. 622.) In the case at bar Lunsford testified on his own behalf, subjecting himself to cross-examination, and thus no claim can be made that Holtz's right of confrontation was abridged.

It is also asserted that the admission of Lunsford's post-arrest statement forced Holtz to testify in order to refute the allegations contained therein and, consequently, he was denied his fifth amendment privilege against self-incrimination. However, the instant case was a bench trial. Where the trial judge was the trier of fact it must be "presume[d] that he made his finding only upon competent evidence." (*People v. Earl*, 34 Ill.2d 11, 13, 213 N.E.2d 556.) Accordingly, since Lunsford's statement

was used only against its maker, Holtz was under no compulsion to testify, and his decision to take the witness stand must be deemed to have been a voluntary act. *Cf. United States v. Withers,* 303 F. Supp. 641 (N.D.Ill.).

■■■ Finally, Holtz contends that his conviction should be overturned because the State failed to disprove beyond a reasonable doubt his defense of self-defense. Holtz claims that his life was threatened by Lunsford and Luppke and that "operating in a state of panic" he reached over the back seat and seized the steering wheel, causing the car to swerve into oncoming traffic. The issue of self-defense is a question to be resolved by the trier of fact, and a court of review will not disturb a finding on this matter unless it is so unsatisfactory as to raise a reasonable doubt as to defendant's guilt. (*People v. French,* 3 Ill.App.3d 884, 279 N.E.2d 519.) The trier of fact need not accept as true testimony concerning self-defense presented by the accused. Rather, "in weighing such evidence it must consider the probability or improbability of the testimony, the circumstances surrounding the killing, and the testimony of witnesses other than the accused." (*French* at 887; *People v. Warren,* 33 Ill.2d 168, 210 N.E.2d 507; *People v. Uher,* 375 Ill. 499, 31 N.E.2d 936.) In the instant case Holtz claims that his drinking companions, one of whom was brandishing a knife, threatened his life. He admits to having been at least mildly intoxicated at the time of the alleged threat. Despite the fact that police arrived at the scene within minutes of the collision, their search of Lunsford's car produced no weapons. Clearly, the trial judge disbelieved his assertion that he was acting in defense of his life. That finding is supported by substantial evidence and will not be disturbed on review. We therefore hold that Holtz was proven guilty beyond a reasonable doubt.

■■ Holtz contends in a supplemental brief that he is entitled to reversal of one of the convictions for involuntary manslaughter. It cannot be doubted that both charges of involuntary manslaughter arose out of the same act, *i.e.,* Holtz's grabbing of the steering wheel which caused Lunsford's car to swerve into another auto, killing its two occupants. (See *People ex rel. Starks v. Frye,* 39 Ill.2d 119, 233 N.E.2d 413.) The Supreme Court has recently held that where two counts of an indictment are "founded on a single act of the defendant * * * there can be but one conviction of crime." (*People v. Lilly,* 56 Ill.2d 493, 495, 309 N.E.2d 1.) We therefore reverse the judgment of conviction entered against Holtz on Count 4 of the indictment which charged the involuntary manslaughter of James Morano, Senior, and affirm the conviction of Holtz on Count 3 charging the involuntary manslaughter of Belle Morano.

Since we have determined that Lunsford was not proven guilty beyond a reasonable doubt of any of the charges, we reverse the conviction of Lunsford on the two charges of involuntary manslaughter and also reverse the convictions of driving too fast for conditions and driving while under the influence of an intoxicating liquor.

Affirmed in part; reversed in part.

SULLIVAN, P. J., and LORENZ, J., concur.