THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN FRANCIS POTCHER, Defendant-Appellant.

(No. 59942;

First District (3rd Division)—February 6, 1975.

James J. Doherty, Public Defender, of Chicago (William Krahl and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Thomas D. Rafter, and Ferdinand M. Minelli, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Defendant, John Francis Potcher, was charged by indictment with two

counts of murder, one count of attempt murder and two counts of aggravated battery. Following a jury trial, defendant was found guilty on all counts. On August 14, 1973, the trial court judge, concluding that all the offenses arose from the same conduct, imposed judgment only on the verdict finding defendant guilty of murder and sentenced defendant to a term of imprisonment of not less than 20 nor more than 60 years. Defendant now appeals this conviction.

Defendant makes the following contentions on appeal: (1) that the State failed to prove the identity of the perpetrator of the crimes in question beyond all reasonable doubt; and (2) that the sentence which the defendant received was excessive under the circumstances and should be reduced. Defendant also asks this court to clarify the judgment of the trial court by vacating the judgment on all the counts except murder.

We vacate in part and affirm as modified.

Defendant, John Francis Potcher, was charged with and convicted for the killing of L. C. Malcom and the wounding of Henry Evans in a shooting which occurred on October 2, 1971, in front of the Salt and Pepper Lounge located at 1107 West Leland Street in Chicago, Illinois. The evidence indicated that one shot from a shotgun was fired from an auto double parked in front of the Salt and Pepper Lounge.

The only witnesses who testified at trial were presented by the State. The defendant did not elect to present any witnesses and did not himself testify.

The first witness to testify at trial, Lucille Malcom, wife of the deceased L. C. Malcom, testified that on the night of the shooting, she and her husband had gone to Eddie Quall's Lounge, located at Winthrop and Leland Streets, directly across the street from the Salt and Pepper Lounge. While at Eddie Quall's Lounge at a time when her husband was not with her, the defendant offered to buy her a drink and she refused. The defendant then left Eddie Quall's Lounge and shortly thereafter L. C. Malcom returned. After a brief discussion about the price of drinks, L. C. Malcom left to go across the street to the Salt and Pepper Lounge. Mrs. Malcom, being detained at the front door of the Quall's Lounge, remained. While Mrs. Malcom was detained at the front door of the Quall's Lounge a man ran up to her and she then ran across the street to the Salt and Pepper Lounge. Upon her arrival at the Salt and Pepper Lounge, she found that her husband had been shot and was on his knees bleeding. Mrs. Malcom further testified that when she observed the defendant at the Quall's tavern he was wearing a dirty white t-shirt and blue jeans. She did not remember if the defendant had a beard or a moustache.

The next witness to testify for the State, Henry Evans, testified that

he was inside the Salt and Pepper Lounge from approximately 8 P.M. to 10:35 P.M. and that he then went outside to talk to a friend in front of the Lounge. While in front of the Lounge, he saw a car pull up and double park across the street in front of the Salt and Pepper Lounge, approximately 30 or 40 feet from where Evans was standing. Evans testified that he saw one person, a male, in this car, that after observing this person, he turned to talk to his friend and then felt "some shots in [his] arm." The force of the shots turned him around and knocked him to the ground. He then looked up and saw smoke coming from the front window of the driver's side of the car that was double parked. Evans further testified that his car looked blue to him and was a 1963 or 1964 Pontiac. Evans identified this car as the one shown in People's exhibits one and two, photographs of defendant's car. Evans further testified that the man in the car had no beard or moustache and was wearing a white t-shirt with a round neck and short sleeves. In the courtroom, Evans identified the defendant, John Potcher, as the man in the car.

Another witness, John Norton, testified that on the night of the shooting, as he was walking home on Leland Street, he saw a 1963 silver-gray Pontiac pull up on the opposite side of the street from the Salt and Pepper Lounge with a shotgun protruding from the window on the driver's side. Norton stated that he saw one male in the car holding the shotgun. As Norton approached the rear of this Pontiac he heard a shot and ducked behind a parked car. He then went across the street where he had seen a person stagger and fall. As he crossed the street he was parallel with the driver's door of the Pontiac and at this point observed the face of the person in the Pontiac. Norton observed that this person was wearing a white t-shirt with a round neckline, had black hair and had neither a moustache nor a beard. In the courtroom Norton identified this person in the Pontiac as defendant, John Potcher.

The next witness, Arthur Griggs, testified that on the night of the shooting he was seated on the hood of his car parked in front of the Salt and Pepper Lounge; that he saw defendant's automobile depicted in People's exhibits one and two in the Foster-Sheridan parking area sometime prior to the night of October 2, 1971; and that at approximately 11:30 P.M. the night of the shooting he observed that vehicle pull up directly across from the Salt and Pepper Lounge. Griggs stated that the car was occupied by one man, and a shotgun was pointed out the car window towards the tavern. The witness then heard a shot and watched the car proceed toward the parking area at Foster and Sheridan where Griggs had seen the car previously.

Another witness, Miss Linda Berger, stated that she went to retrieve her car parked in a vacant lot in the area of Foster and Sheridan at ap-

proximately 11:30-11:45 P.M. She found her car blocked in and returned 5 minutes later. At this point she observed policemen looking at and feeling the engine and hood of a Pontiac. She identified the Pontiac in People's exhibits one and two as being an accurate portrayal of this car. When the police left, a man came over to her and asked what the police were doing with the Pontiac. She identified the defendant as being the man that talked to her. Later that same man came over to Miss Berger again and asked her if the police had found any guns. Miss Berger told him they had not and at this point, according to Miss Berger's testimony, the defendant then told her "I think I just shot two Negroes." Miss Berger further stated that defendant told her that he had just been robbed of $15, said that he "doesn't take that * * * from People," and then asked her if she would aid him in disposing of some guns, pointing toward a truck. When Miss Berger refused to help, the defendant left for his car. At this point the police arrested the defendant, whereupon Miss Berger told them of the admission that the defendant had made. Miss Berger also stated that the defendant was wearing a dirty, white t-shirt and dark slacks and that, while not clean shaven, he did not have a beard or moustache.

Officer David Sandlund of the Chicago Police Department testified that he went to the parking lot area of Foster and Sheridan looking for the Pontiac car identified by the witnesses at the Salt and Pepper Lounge and that upon arrival at the parking lot he found the defendant under the hood of the car and placed him under arrest. Officer Sandlund also stated that he recovered a shotgun and Winchester rifle in the lot about 100 feet from defendant's car and that defendant admitted that the weapons were his. Contrary to Linda Berger's testimony, Officer Sandlund stated that at the time of his arrest, the defendant had a moustache.

Officer Schwind who also participated in defendant's arrest and recovery of the weapons testified that the defendant wore a dirty, white t-shirt at the time of his arrest and that the defendant appeared substantially the same in court as at the time of his arrest.

The defendant was questioned at the Foster Avenue Police Station by Chicago Police Investigator Richard Kent Morask. Morask testified that the defendant had a one day's growth of whiskers, but that he was not wearing a moustache. Morask further testified that after being advised of his rights, the defendant told him he owned the guns recovered in the Foster-Sheridan Park area. The defendant further admitted to Officer Morask that he saw a girl in the Foster-Sheridan parking area and that he had asked her why the police were in the area. The defendant also stated to Morask that he had been robbed earlier in the evening by three male Negroes and when Morask asked where this robbery occurred the defendant answered that it took place across the street from the

shooting. However, Morask testified that he had never mentioned to the defendant the location of any shooting that night. The defendant also admitted to Morask that he owned the Pontiac car in question.

The following stipulations were made at trial: that the examining pathologist found the cause of L. C. Malcom's death to be shotgun wounds to the chest which penetrated Malcom's breast and lungs; that a fingerprint taken from inside the Pontiac matched the print of the corresponding finger of the defendant on his fingerprint card; and that a certified copy of an automobile registration from the office of the Illinois Secretary of State would show that John Potcher, the defendant, was the owner of the 1964 Pontiac referred to at trial.

Defendant first argues that the State failed to prove the identity of the perpetrator of the crimes beyond all reasonable doubt. In support of this contention defendant argues that Lucille Malcom's testimony was doubtful, vague and uncertain, that Evans' opportunity to observe the perpetrator of the crime was limited by time, distance, and obstructions, and that Norton's opportunity to observe the driver of the car occurred in the midst of the excitement of the shooting. We have carefully examined the record and find the testimony of these witnesses to be clear and convincing. The lighting in the area was good, the witnesses were within close range of the defendant, and, as the record reflects, each witness had ample opportunity to observe the defendant.

Defendant further points out that Officer Sandlund testified that the defendant definitely had a moustache and that this contradicts the testimony of Miss Berger who claimed that defendant, although having a growth of whiskers, did not have a moustache. Here we must note that Miss Berger's testimony is supported by Officer Morask, who shortly after the shooting questioned the defendant at the Foster Avenue Police Station. Officer Morask stated that defendant had a 1 day's growth of whiskers, but did not have a moustache.

We believe that the discrepancy in the testimony concerning whether or not the defendant had a moustache is minor when compared with the overwhelming evidence of defendant's guilt. Two witnesses identified the defendant as the man in the car who fired the shot that killed L. C. Malcom. Several witnesses identified the defendant's car as the car from which that shot came. The police recovered two guns, one of them a shotgun, in the parking lot where defendant's car was found. Defendant admitted that these guns were his guns. Furthermore, Miss Berger testified that the defendant admitted to her that he "had just shot two Negroes."

■■ As stated in *People v. Keagle* (1955), 7 Ill.2d 408, 413, 131 N.E.2d 74, 77:

"There is no question but that the State must prove, beyond a

reasonable doubt, the perpetration of the crime by the person accused, (*People v. Kidd,* 410 Ill. 271; *People v. Del Prete,* 395 Ill. 110), but this is ordinarily a question of fact for the jury. (*People v. Tomaszewski,* 406 Ill. 346; *People v. Leach,* 398 Ill. 515.) We will not reverse a conviction on the question of sufficiency of identification unless it is contrary to the weight of the evidence, or is so unsatisfactory as to justify a reasonable doubt of defendant's guilt (*People v. Ortega,* 5 Ill.2d 79; *People v. Harris,* 391 Ill. 358.) The doubt must be reasonable and well founded. *People v. Ortega,* 5 Ill.2d 79; *People v. Del Prete,* 395 Ill. 110."

■■ In the present case, a jury heard all the evidence and ruled that the defendant was guilty beyond all reasonable doubt. We feel that based on all the evidence there is no reasonable doubt of defendant's guilt and that his conviction must be affirmed.

Defendant next contends that the sentence was excessive and should be reduced. In support of this contention defendant states that there is evidence that he was drunk at the time of the shooting, that he is a family man who was gainfully employed at the time of the incident, and that there is evidence of provocation because the defendant had been robbed by three blacks on the night of the shooting.

■■ As stated in *People v. Burbank* (1972), 53 Ill.2d 261, 275, 291 N.E.2d 161, 169:

> "The imposition of a sentence is a matter of judicial discretion and the sentence imposed by the trial court should not be altered by a reviewing court unless it is apparent that the judge abused his discretion. (*People v. Bonner,* 37 Ill.2d 553.) We have often stated that the trial court is normally in a better position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts on review. (*People v. Taylor,* 33 Ill.2d 417, at 424; *People v. Hampton,* 44 Ill.2d 41, at 48."

■■ In the case at bar the defendant, previous to the incident in question, had been convicted several times for larceny, and had further convictions for parole violation, carrying a concealed weapon and disturbing the peace. Considering defendant's past record, we do not feel that the trial court abused its discretion in sentencing the defendant.

Finally, defendant asks this court to clarify the judgment of the trial court by vacating judgment on all of the charges except murder. The record indicates that the jury returned verdicts of guilty of murder, attempt murder and aggravated battery. Judgment was entered on all of these charges. The trial judge, stating that all charges arose from a single

act of the defendant, sentenced the defendant on only the offense of murder. Defendant claims that the trial judge's statement that he was "sentencing" only on the charge of murder creates an ambiguity as to whether the convictions on the remaining counts still technically remain in force. We feel that the record indicates that the trial court clearly intended that the remaining charges not remain in force and further believe that the trial court was correct in so intending.

■■ The trial court observed that only one shot was fired and there was a singleness of intent on defendant's part. The record amply supports these observations. Under such circumstances there can be but one conviction of crime. (See *People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1, and *People v. Holtz* (1974), 19 Ill.App.3d 781, 313 N.E.2d 234.) We vacate the charge of attempt murder and two charges of aggravated battery.

Accordingly, the judgment of the trial court is affirmed as modified.

Judgment vacated in part and affirmed as modified.

DEMPSEY and MEJDA, JJ., concur.