THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEVE HANNA (Impleaded), Defendant-Appellant.

Fourth District   Nos. 13583, 13584 cons.

Opinion filed April 25, 1977.

TRAPP, J., specially concurring.

Richard J. Wilson and Richard J. Geddes, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the Circuit Court of Macon County, defendant Steve Hanna was convicted of the offense of armed robbery and sentenced to 20 to 60 years imprisonment. After a bench trial in the same court, he was also convicted of four counts of violation of bail bond and ordered to serve a single sentence of 1 to 3 years imprisonment to run consecutively to the sentence for armed robbery. Defendant has appealed from the conviction and sentence in each case. Upon appeal, these cases have been consolidated as our cases Nos. 13583 and 13584 respectively.

In both cases defendant claimed indigency, refused the appointment of the public defender as counsel and procured a finding by the court that he had properly waived counsel. The claims of error which he cites on appeal are procedural in nature and relate to problems which can arise when a defendant proceeds pro se. He contends that the trial court erred because: (1) the original judge "remained in the case after allowing a motion for substitution of judges," (2) the original judge's rulings prevented him from preparing his defense, and (3) he was not given sufficient time to secure witnesses or examine the presentence report prior to the sentencing hearing. In the case involving the armed robbery charge, he also complains that he was denied a fair trial because the court prohibited him from directly questioning prospective jurors during voir dire. In the case involving the bail bond violation charges defendant also

contends that, although only one sentence was imposed, the court erred in entering judgments on multiple convictions which were based on the same conduct.

On November 11, 1974, defendant failed to make a required appearance in the armed robbery case. One of the bail bond violation charges concerned his failure to make this and other appearances in that case. On March 24, 1975, he was brought into court by the sheriff and was thereafter unable to make bond. At that time over defendant's objection the court ordered the public defender to serve as advisor to the defendant in both cases, preparing motions, obtaining witnesses and furnishing such other services as requested. On March 31, 1975, at defendant's request, the public defender presented a motion which he had prepared alleging the prejudice of the judge who had been hearing matters in both cases. Defendant's first two claims of error arise from the proceeding which took place upon the presentation of this motion.

The defendant, his advisor and a prosecutor were all present when the motion for substitution of judges was presented. An open court discussion ensued concerning various pending motions but the judge entered no orders on those motions. The judge then stated that although he doubted that the motion for substitution was timely, he was going to allow it. The judge then ordered the sheriff to take the defendant to a room where he could interview witnesses as previously arranged. The defendant then requested of the judge clarification of the procedure by which he might interview witnesses while he remained in jail. The court explained that arrangements had been made for him to use an interview room in the basement of the building that housed the jail at 10 a.m. or 2 p.m. of each day as long as defendant gave the jailor 24 hours advance notice of his intention to use the room. Upon receiving this answer defendant then asked about arrangements for his use of some of his paraphernalia including some law books which were being held by the sheriff. The court responded that defendant was not allowed to have a typewriter in his cell but that the public defender had been ordered to see to the typing of such documents as defendant needed. With reference to defendant's use of the law books, the court stated that although he was withdrawing from the case, he would continue to have administrative responsibility for the jail and would not permit a law library or office to be set up in defendant's cell. The defendant stated that he was only interested in obtaining his own law books. At this point, the subject of the discussion turned to a claim then made by the prosecutor that a previous public defender had given defendant some books from the county law library which had not been returned. The parties then agreed to a date for the trial of the bail bond violation charges. A written order bearing that date denying defendant permission to set up "a law office or library in a jail cell" and setting forth

the rules for defendant's interview of witnesses was filed a few days later.

■■ The acts of the original judge which defendant describes as "remaining on the case" after the filing of the motion for substitution are that judge's answering the questions asked by defendant and the entry of the order setting forth his rulings on those points. No contention was made at the trial level that these acts were improper because of the filing of the motion for substitution. Defendant filed post-trial motions in both cases and did not raise the point. In the bail bond violations case, the court refused to consider the motion because he ruled it to be untimely. At least as far as the robbery case, where the motions were ruled on, is concerned, defendant's claim is waived unless the acts constitute plain error. (*People v. Buckley* (1976), 40 Ill. App. 3d 750, 353 N.E.2d 4.) In any event, since these acts of the original judge were directly requested by defendant, largely involved a clarification of procedures previously ordered and concerned the administration of the jail rather than the direct conduct of either case, no error occurred.

■■ Defendant does not now complain because the court did not permit him to take his typewriter to his cell but maintains that reversible error occurred because he was not permitted access to his law books held by the sheriff. Defendant complained of this at various stages of the proceedings but never indicated how big the collection of books was or what books were in the collection. In the proper administration of the jail it would have been necessary to extend any privileges given to defendant to all other prisoners. Defendant has not presented for the record sufficient information for us to determine that it would have been feasible for the court to have permitted him effective use of these books. The court did provide him indirect access to law books through the services of the public defender. The record is full of written documents filed by the defendant bearing legal citations and oral arguments by defendant where he referred to legal citations. The problems inherent in an incarcerated accused electing to represent himself are illustrated by the dispute on this issue. We do not find the trial judge's handling of the defendant's request for access to these books to be shown to be error.

■■ The parties in the armed robbery case were not permitted to directly question any prospective jurors during the selection of the jury. At that time, April 1975, Supreme Court Rule 234 (Ill. Rev. Stat. 1973, ch. 110A, par. 234), made applicable to criminal cases by Supreme Court Rule 431 (Ill. Rev. Stat. 1973, ch. 110A, par. 431), provided that in selecting a jury, the judge should examine the prospective jurors upon their qualifications and then permit the parties "reasonable" opportunity to supplement that examination with questions of their own. In *People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325, while approving the

limitations upon parties questioning of prospective jurors imposed by the predecessor to Supreme Court Rule 234, the supreme court indicated that the parties were entitled to some form of questioning. More recently, various districts of the appellate court have held that no reversible error occurred when, as here, the trial judge precluded the parties from directly questioning as long as it was not shown that a defendant had been prevented from discovering a juror's bias, prejudice or other lack of qualification. (*People v. Green* (1975), 30 Ill. App. 3d 1000, 333 N.E.2d 478; *People v. Carruthers* (1974), 18 Ill. App. 3d 255, 300 N.E.2d 659; *People v. Caldwell* (1976), 39 Ill. App. 3d 1, 349 N.E.2d 462.) In *Caldwell* the trial judge's action in permitting the parties to submit questions for him to ask the jurors concerning their possible prejudice gave the defendant the opportunity to supplement the court's examination as required by the rule. Here, the trial judge also gave the defendant an opportunity to submit questions for him to ask the jurors. Defendant submitted no such questions. Neither did he exhaust his peremptory challenges. No error occurred in the selection of the jury.

■■ The State's brief does not contest defendant's contention that under the decisions in *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E. 1, and *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819, only one judgment of conviction can stand on the bail bond violation charges. The conduct of defendant giving rise to these convictions was his failure to appear in court as required on November 13, 1974, and his failure to surrender himself within 30 days thereafter. The offense thus involves the same acts committed with the same motivation. The most serious charges for which the bond was violated were the armed robberies charged in counts I and III. Accordingly, we rule that the judgments of conviction on counts I, II and IV should be vacated.

On June 12, 1975, after denying defendant's post-trial motions in the armed robbery case and ruling that the post-trial motion in the bail bond violations case was not timely, the court set both cases for sentencing on the next day. Defendant objected to the early setting, complaining that he needed more time to prepare for the hearing and to secure witnesses. He also complained that he had not been given access to any report of presentence investigation. A presentence investigation report was filed on the date of hearing and defendant was permitted to see the report. Defendant again complained of the timing of the hearing and the presentation of the presentence report. Defendant refused the prosecutor's request that defendant state the names of the witnesses he would have called so that the prosecutor might decide whether he would stipulate to their testimony. The court then proceeded to hold a sentencing hearing.

Section 5—3—4 of the Unified Code of Corrections provides that

presentence reports shall be filed in a sealed envelope and "be open for inspection only as follows * * * (2) to the State's attorney and to the defendant's attorney at least 3 days prior to the imposition of sentence * * *." The comments of the group drafting the Unified Code of Corrections state that this section "[m]akes the presentence reports available to the parties * * *." (Ill. Ann. Stat., ch. 38, par. 1005—3—4, Council Commentary, at 270 (Smith-Hurd 1973).) It is well established that a defendant is entitled to a reasonable time to prepare for a sentencing hearing. (*People v. LaRocco* (1970), 123 Ill. App. 2d 123, 260 N.E.2d 53; *People v. Williams* (1973), 16 Ill. App. 3d 146, 305 N.E.2d 333.) Here, defendant was not given the 3-day period to examine the presentence report and was given only one day's notice of the sentencing hearing.

■■ We are aware that defendant has not shown how he was surprised by any information in the report of the presentence investigation and was not willing to reveal who his witnesses would be and what they would testify if defendant had been given sufficient notice to have the witnesses subpoenaed. We are also mindful of the difficulties imposed upon both the court and the prosecution by the conduct of the defendant throughout the trial. The record bears evidence of forbearance on the part of both during the trial. Nevertheless, the totality of the sentences imposed is severe. Because of the combined effect of the violation of section 5—3—4 and the short notice of hearing, defendant was not given a fair opportunity to prepare for the hearing where those sentences were imposed.

We affirm the judgments of conviction in No. 13583, the case where armed robbery was charged, and as to count III in No. 13584, the case where bail bond violations were charged. The judgments of conviction on counts I, II and IV in No. 13584 are reversed. The sentences in both cases are reversed. Both cases are remanded to the Circuit Court of Macon County for vacation of judgments on the convictions on counts I, II and IV in No. 13584 and for a new sentencing hearing in both cases.

Affirmed in part, reversed in part and remanded.

CRAVEN, P. J., concurs.

Mr. JUSTICE TRAPP, specially concurring:
Upon this record I concur in the result. I do not concur in the language inferring that a single act of flight would make improper convictions and sentences upon the resulting violations of four bail bonds.

The opinion relies upon *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1 (rape and indecent liberties), and its predecessors, *People v. Schlenger*

(1958), 13 Ill. 2d 63, 147 N.E.2d 316 (armed robbery and grand larceny), and *People v. Duszkewycz* (1963), 27 Ill. 2d 257, 189 N.E.2d 299 (rape and incest). Each considered a single act committed upon a single victim resulting in the committing of more than one offense. These cases, together with the succeeding *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762 (theft and battery), held that upon such facts there could be but one conviction and sentence. It may be said that the opinion in *Lilly* emphasized that more than one offense resulted from the single act upon a single individual.

Here, the single act which violated four separate bail bonds is more than properly likened to an act which is directed against more than one individual as victims of the act. So here the act at issue is more comparable to those in *People v. Allen* (1937), 368 Ill. 368, 14 N.E.2d 397 and *People ex rel. Starks v. Frye* (1968), 39 Ill. 2d 119, 233 N.E.2d 413, where the acts of the respective defendants in driving an automobile resulted in the deaths of two people in each instance. *Allen* was written in the context of double jeopardy by reason of a trial for the death of a single victim following the discharge of the defendant upon the charge of causing the death of the first victim. While section 3—3(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 3—3(d)) would now require a single prosecution for both deaths, the opinion held in substance that the separate deaths constituted separate offenses. In *Starks,* the opinion did not challenge the propriety of concurrent convictions and sentences, but held that the sentences could not be consecutive by reason of the operation of section 1—7(m) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 1—7(m)).

In *People v. Ellington* (1972), 7 Ill. App. 3d 72, 286 N.E.2d 367, the court examined *Allen* and concluded that it is the identity of the offense which permits prosecution and punishment rather than the identity of the act.

We note that contrary positions have been taken in *People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234, *appeal denied,* 56 Ill. 2d 589, and *People v. Potcher* (1975), 26 Ill. App. 3d 540, 325 N.E.2d 753. These opinions rely upon *Lilly* without distinguishing an act directed to a single victim from an act affecting more than one.

These facts appear to be within the rule of *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, wherein it was held proper to convict and to impose concurrent sentences upon an armed robbery in which three different individuals were victims at the same time. See also *People v. Smith* (1976), 42 Ill. App. 3d 109, 355 N.E.2d 601; *People v. Lewis* (1974), 17 Ill. App. 3d 188, 308 N.E.2d 59, *aff'd* (1975), 60 Ill. 2d 152, 330 N.E.2d 857 without discussing this issue; *People v. Robinson* (1976), 41 Ill. App.

3d 526, 354 N.E.2d 117; *People v. Terry* (1976), 38 Ill. App. 3d 517, 347 N.E.2d 869.

Upon consideration of these authorities it would be proper to convict and to sentence upon each violation of bail bond.