(Nos. 42376, 42377 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANDREW BROOKS *et al.*, Appellants.

*Opinion filed March 30, 1972.*

HARVEY WALNER, of Chicago (EDWIN J. BELZ, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and GEORGE M. ELSENER, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Defendants, Andrew Brooks and Celester Jones, were tried together and found guilty of armed robbery and murder by a jury in the circuit court of Cook County. Brooks was sentenced to terms of 10 to 30 years on the armed robbery charge and 30 to 70 years on the murder charge, the terms to run concurrently. Jones was sentenced to terms of 10 to 30 years on the armed robbery charge and 40 to 80 years on the murder charge, the terms to run concurrently. Both Brooks and Jones have appealed and their appeals have been consolidated in this court.

Between 8 and 9 P.M. on November 20, 1967, five boys, Jones, Brooks, Hubbard, Williams and Hart, 17 and 18 years of age, were in an apartment. Hubbard showed the other boys a .22 rifle which had the barrel sawed off. As the group left the apartment with the rifle they saw an insurance man in the lobby of the apartment building. They decided to rob him. While doing so Jones shot the insurance man who died from his wound. The boys took $35 from his pocket and fled to Hart's apartment where

they divided the money. Hubbard gave his share back. Hart put the rifle in a drawer in his sister's room.

The next morning the police received information that Hubbard had told another boy that some boys had shot an insurance man in his apartment house. Three officers on questioning Hubbard learned that Jones and Brooks were involved. Hubbard agreed to help the police locate them. The police did not arrest Hubbard because they did not think he was involved. Brooks was located first, placed under arrest, advised of his constitutional rights and placed in the squad car with the three officers and Hubbard. A little later Jones was seen on the street and Hubbard pointed him out to the police. Jones was then arrested and informed of his constitutional rights and placed in the squad car with the others. Both Jones and Brooks were informed that they were under arrest for the shooting of the insurance man. On the way to the police station the officers purchased sandwiches for lunch for themselves and the three boys. Jones and Brooks were not questioned about the crime while in the squad car. On arrival at the police station the three boys were taken to a room that had a table and chairs in it. They were given their sandwiches and the three officers went into the next room and sat at a table to eat their lunch. The table was near the door to the room where the boys were sitting. The door was open and some of the officers could see the boys from the table and the boys could see the officers.

As the officers were eating they overheard a conversation among the three boys. Brooks asked Hubbard why he was not under arrest and accused Hubbard of participating in the crime and of receiving money. Hubbard admitted that it was his gun but stated he had not shot anyone and had given the money back. Brooks then said that Jones shot the man. Jones remained silent and did not reply to the accusation. The conversation was held in the normal tone of voice and was plainly audible to the officers. It is not contended that Jones did not hear the accusation. The

officers then entered the room and informed Hubbard that he also was under arrest. Later Jones admitted to an officer that he had shot the decedent but claimed it was an accident. He stated that he just pointed the gun at the man and it went off.

Jones, Brooks and Hubbard were jointly indicted. Each was represented by a different attorney and each moved for a severance and separate trial which motions were denied. The court likewise denied the motion of each defendant to suppress his statement and a motion to suppress the sawed-off rifle.

After the trial started the court declared a mistrial as to Hubbard and granted him a severance because of information elicited from a State's witness during cross-examination by Jones's attorney.

Both defendants contend that the court should not have permitted the officers to testify as to the conversation they overheard in the police station among Jones, Brooks and Hubbard, claiming a violation of their fourth amendment rights, relying on *Katz v. United States (1967), 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507.* Admittedly, as defendants contend, *Katz* states that the fourth amendment "protects people, not places." However, *Katz* also states that what a person knowingly exposes to the public is not a subject of fourth amendment protection. (389 U.S. at 351, 19 L.Ed.2d at 582.) In *United States v. White (1971), 401 U.S. 745, 28 L.Ed.2d 453, 91 S.Ct. 1122,* the court stated that the problem is not what the privacy expectations of particular defendants in particular situations may be, but what expectations of privacy are constitutionally justifiable. (401 U.S. at 751-2, 28 L.Ed.2d at 458-459.) *White* also held that *Katz* did not overrule *On Lee v. United States (1952), 343 U.S. 747, 96 L.Ed. 1270, 72 S.Ct. 967,* to the extent that *On Lee* held that overheard conversations were admissible as evidence though "talking confidentially and indiscreetly with one he trusted." We do not therefore find anything in *Katz*

which requires us to hold that the defendants' fourth amendment rights were violated when the police officers overheard their conversation. The facts of this case do not indicate any expectation of privacy at any time on the part of defendants. The door between the two rooms was open. The officers were seated at a table where some of them could see the defendants and defendants could see them. The conversation among the defendants was carried on in a normal tone of voice and was easily overheard by the officers.

It is also contended that the statements which were overheard violated the defendants' fifth amendment rights. Defendants had been advised of their constitutional rights as prescribed by *Miranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602.* The statements which were overheard were not elicited by interrogation by or on behalf of the police. *Miranda* specifically excludes from the application of its holding statements freely and voluntarily given without any compelling influence. (384 U.S. 436, 478, 16 L.Ed.2d 694, 726, 86 S.Ct. 1602.) In *People v. Doss (1970), 44 Ill.2d 541,* as a result of urging by a co-defendant, information was given directly to the police by a defendant who had previously elected to remain silent. This court held that such conduct did not amount to interrogation and that the information thus given fell within the above exception noted in *Miranda.* The conversation involved in this case falls within the same exception.

Defendants raise a further constitutional objection to the introduction of the evidence of the overheard conversation. It is their contention that the admission of this testimony violated their sixth amendment constitutional right to confront the witnesses against them, citing *Bruton v. United States (1968), 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620.*

In our case it was Brooks who initiated the overheard conversation by saying to Hubbard, "Why aren't you

under arrest? It was your gun that was used and you got some of the money, why aren't you under arrest with us?" Hubbard replied, "Well, it was my gun, but I didn't shoot anybody," and Brooks answered, "Well, I didn't shoot anybody either, Celester shot the man."

In this conversation between Brooks and Hubbard, we find no violation of Brooks' sixth amendment right of confrontation. Brooks had implicated himself by his own comments and he did not disagree with anything that Hubbard said nor did he do anything other than adopt Hubbard's statements. It is well established that when an extrajudicial statement by a third person is admitted to be true by an accused the same is admissible in evidence at his trial. *People v. Hanson (1964), 31 Ill.2d 31; People v. Johnson (1970), 44 Ill.2d 463.*

As to Jones' sixth amendment right to confrontation it must be remembered that it was Brooks who accused Jones of shooting the man. At the joint trial Brooks took the stand and testified in his own behalf. He was cross-examined by the State and he denied having had a conversation with Hubbard in the presence of Jones and denied that he told Hubbard that Jones had shot the man. Counsel for Jones did not cross-examine Brooks. In *Nelson v. O'Neil (1971), 402 U.S. 622, 29 L.Ed.2d 222, 91 S.Ct. 1723,* the Supreme Court considered a factual picture similar to the one now before us and concluded that the defendant had not been denied his right to confrontation. The court held that the testimony of the declarant at the trial denying that he had made the out-of-court statement was more favorable to the accused than any that cross-examination by counsel could produce had he affirmed the statement as his. See also *California v. Green (1970), 399 U.S. 149, 26 L.Ed.2d 489, 90 S.Ct. 1930.* In view of the availability of Brooks at the trial for cross-examination and his denial that he had made the statement accusing Jones, under the authority herein cited, the testimony concerning Brooks's out-of-court accusation of Jones did not violate

Jones's sixth amendment right of confrontation. Hubbard's part of the conversation did not implicate Jones.

Jones further claims that a statement which had been taken from him in violation of the requirements of *Miranda v. Arizona*, was used as evidence at his trial. Jones made this statement to a police officer. The State did not question the officer concerning the statement on direct examination. However, on cross-examination Jones's attorney asked the officer: Q. "Didn't Celester Jones at all times deny any knowledge about the shooting in this case?" A. "No sir." Q. "When did he say he knew something about it?" A. "When he told me how he shot the man." Q. "When did he tell you that?" A. "He told me that while we were seated in the room."

On redirect examination the officer, after stating that the conversation took place in the room where the three boys and the detectives were and occurred after the conversation among the three boys had been overheard, testified: "He was told that Ivory Hubbard and Andrew Brooks were accusing him of being the shooter and we asked him what did he have to say about it. At this time he told us that he did shoot the insurance man, he says, but he held the gun up, held the gun up at the insurance man, he held the gun up and the gun accidentally went off."

The State urges that since Jones's attorney on cross-examination of the officer first disclosed the fact that Jones had made the incriminating statement, he thereby waived his right to now contend that it was not admissible, citing *People v. Henry (1954), 3 Ill.2d 609,* and *People v. Villalobos (1960), 20 Ill.2d 315.* We need not reach this question because Jones knowingly and intelligently waived his right to counsel prior to making the statement. He had been advised of his rights twice, once in the squad car and once in the police station. When he was first arrested, advised of his rights and told that he was being held on the murder charge he said that he didn't know what they were talking about. When he was

informed of his rights in the police station he stated that he understood his rights. He never said that he did not want to talk about the crime nor did he indicate in any way that he did not want to answer any questions or that he wanted an attorney. He was not interrogated until after the conversation of the three boys was overheard, in which conversation the other two boys had indicated that Jones had fired the shot. When he was asked what he had to say about these accusations he then made the statement to the officer that he had accidentally shot the insurance man. An express waiver of the right to counsel is not necessary. The test is that there be a showing of a knowing intent to speak without counsel. Once the defendant has been informed of his rights and indicates that he understands those rights it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. *(People v. Johnson (1969), 70 Cal.2d 541, 450 P.2d 865, 876, 75 Cal.Rptr. 401; People v. Higgins (1971), 50 Ill.2d 221.)* In *Higgins*, as in this case, there was no statement by the defendant that he was willing to waive his rights or that he did not want an attorney. There, as in this case, the defendant was informed of his rights, stated that he understood them and voluntarily made a statement. We held that this conduct constituted a waiver.

Both defendants argue that the statements which they made should have been suppressed because they were not immediately after arrest taken before a judge. Section 109—1 of the Code of Criminal Procedure (Ill.Rev.Stat. 1967, ch. 38, par. 109—1) provides: "(a) A person arrested without a warrant shall be taken without unnecessary delay before the nearest and most accessible judge in that county and a charge shall be filed."

Defendants acknowledge that this court has not adopted the exclusionary rule of the Federal courts as stated in *McNabb v. United States (1943), 318 U.S. 332, 87 L.Ed. 819, 63 S.Ct. 608,* and *Mallory v. United States*

*(1957), 354 U.S. 449, 1 L.Ed.2d 1479, 77 S.Ct. 1356.*
Defendants urge however that we now adopt the Federal
rule in view of the fact that in Cook County there now
exists a 24-hour-a-day bond court to determine probable
cause and to set bond. Cook County contains less than one
half of the population of the State of Illinois. A rule
requiring that the defendants be immediately taken before
a judge may be feasible in Cook County but may impose
an unnecessary burden upon law enforcement in the
remainder of the State. Several attempts have been made
to have the General Assembly change the phrase "without
unnecessary delay" to "forthwith" in section 109—1(a).
These attempts have failed (S.H.A. ch. 38, par. 109—1,
Committee Comments 1963). We will therefore not
undertake to read into this section of the statute a
meaning which the legislature has clearly rejected. The rule
of *McNabb* and *Mallory* is one of Federal procedure which
this court has consistently refused to adopt. *People v.
Nicholls (1970), 44 Ill.2d 533.*

A delay in presenting the defendants to a judge does
not render a statement made by the defendants during this
interval inadmissible, but it is a circumstance to be
considered in determining the voluntariness of the state-
ment. *(People v. Higgins; People v. Johnson (1970), 44
Ill.2d 463; People v. Miller (1958), 13 Ill.2d 84.)* In this
case the court conducted a hearing on the motion to
suppress filed by the defendants. At the conclusion of the
motion, the court stated: "From the totality of the
circumstances the court finds that the statements were
freely and voluntarily, willingly and knowingly made."
This finding of the trial court will not be disturbed unless
manifestly erroneous, which we find it not to be. *People v.
Johnson (1970), 44 Ill.2d 463; People v. Daily (1968), 41
Ill.2d 116.*

Prior to trial the court, following a hearing, denied
motions by Brooks and Jones for separate trials. At the
hearing the State represented to the court that the written

statement taken from Hubbard outside the presence of Brooks and Jones would not be offered in evidence. The general rule is that those indicted jointly for the commission of an offense are to be tried together and that the granting of a separate trial rests in the sound discretion of the trial court. The primary question is whether the defenses of the several defendants are so antagonistic that a fair trial can be assured only by a severance. *(People v. Henderson (1967), 37 Ill.2d 489.)* The defenses of Brooks and Jones were not antagonistic. Each testified in his own defense and denied being present at the scene of the crime. Brooks testified he was in the pool hall and at home on the night of the crime. Jones claimed that he was in the pool hall during the time that the crime was committed. Because of the nature of these defenses it was not necessary to grant them separate trials.

In view of the State's representation that it would not use the written statement of Hubbard in the joint trial, it was not error for the trial court to refuse to grant Brooks and Jones a severance from Hubbard. *People v. Clark (1959), 17 Ill.2d 486.*

After the trial started, during the cross-examination of a State's witness, the court declared a mistrial as to Hubbard and granted him a severance because of the cross-examination of a State's witness by Jones's attorney. Both Brooks and Jones contend that they were prejudiced by Hubbard's participation in the trial prior to the declaration of a mistrial. They refer to the opening statement by Hubbard's attorney wherein, in stating his theory of defense, he claimed that someone else did the killing and that his client had withdrawn from the conspiracy prior to the time that the criminal act took place. Hubbard's attorney did not refer to Brooks or Jones by name nor by implication. We can see no prejudice to the defendants, Brooks and Jones, flowing from this opening statement. *(People v. Strayhorn (1965), 35 Ill.2d 41.)* Furthermore, the jury was instructed orally by the

court prior to the opening statements that statements of counsel do not constitute evidence. A written instruction to this effect was given to the jury at the close of the case.

Defendants further contend that Hubbard's attorney in cross-examining a State's witness, an accomplice who had been granted immunity, asked questions which the State could not have asked and thus elicited testimony detrimental to the defendants. We have not been specifically informed as to what these questions and testimony were. In reviewing the testimony of this witness it appears that on cross-examination by Hubbard's attorney he gave substantially the same testimony that he gave on direct examination. The defendants have not demonstrated any prejudice arising from the granting of a mistrial and severance to Hubbard after his limited participation in the trial.

Both defendants complain of the admission into evidence of the sawed-off rifle, the murder weapon, recovered from the home of Kenneth Hart, an accomplice. Hart testified that after the shooting, when the conspirators had left his apartment, he hid the rifle in his sister's bedroom. After his arrest he volunteered to get the rifle and went to his home with two police officers and retrieved the gun. Hart consented to procure the rifle for the police from his home. Obtaining the same under these circumstances does not constitute a search or seizure proscribed by the fourth amendment to the Federal constitution. *Frazier v. Cupp (1969), 394 U.S. 731, 22 L.Ed.2d 684, 89 S.Ct. 1420.*

Both defendants further contend that they were denied a fair trial because certain jurors were excused for cause because they had objections to imposing the death penalty, citing *Witherspoon v. Illinois (1968), 391 U.S. 510, 20 L.Ed.2d 776, 88 S.Ct. 1770.* Although the death penalty was not imposed in this case defendants contend that juries so qualified tend to favor the prosecution and do not represent a cross-section of the community. These

contentions have been rejected by this court in *People v. Hobbs (1966), 35 Ill.2d 263,* and *People v. Cesarz (1969), 44 Ill.2d 180.* We need not reconsider them in this case.

Finally, Brooks who was sentenced from 10 to 30 years for armed robbery and concurrently from 30 to 70 years for murder asks this court to reduce the minimum sentence from 10 years for armed robbery to 2 years and from 30 years for murder to 14 years under the authority conferred on courts of review by Rule 615(b)(4) of this court. 43 Ill.2d R. 615(b)(4).

In this case the defendant Brooks participated in the armed robbery and the fact that he did not himself shoot the deceased does not lessen his accountability for the crime in which he participated. *(People v. Nelson (1965), 33 Ill.2d 48.)* This court has stated that the authority to reduce sentences should be applied with considerable caution, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals. *(People v. Taylor (1965), 33 Ill.2d 417, 424.)* Consideration was given to Brooks's lesser role in the murder as reflected by the difference in his sentence from that imposed on Jones. The sentences of both defendants on the armed robbery conviction were the same. There are no compelling reasons why the sentences of the trial court should be reduced.

For the reasons herein stated the judgments of the circuit court of Cook County will be affirmed.

*Judgments affirmed.*