THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT JONES, a/k/a Robert Jackson, Defendant-Appellant.

First District (4th Division) No. 81—2072

Opinion filed July 14, 1983.

234

ROMITI, P.J., dissenting.

Steven Clark, of State Appellate Defender's Office, and John R. Herrmann, of Winston & Strawn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and James F. Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Robert Jones, was convicted of attempted murder (Ill. Rev. Stat. 1979, ch. 38, par. 8—4) in a jury trial and sentenced to 20 years' imprisonment. He raises the following issues for review: (1) whether the trial court erred in refusing to grant his severance motion; (2) whether his right to confrontation was violated when the trial court permitted a witness to testify as to a codefendant's out-of-court statement; (3) whether the State's use of a codefendant's statements imparted substantive effect to those statements in violation of the hearsay rule, thereby denying him a fair trial; (4) whether the trial court erred in admitting the victim's pretrial and in-court identification; and (5) whether he was proved guilty beyond a reasonable doubt.

Robert Jones, Booker Haynie and Willie Baylock were charged jointly with attempted murder, armed violence, armed robbery and unlawful use of a weapon (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4,

33A—2, 18—2(a), 24—1(a)(10)). Defendant Jones' motion to sever because of antagonistic defenses was denied and the three defendants were tried jointly.

Testimony at trial established the following.

James Ramp testified that on March 30, 1980, he lived at 1101 Winona in Oak Park, Illinois. At about 6:55 p.m., he was closing his garage door when two men ran inside the garage. One man was six feet three inches in height, slim, and wearing a bandanna over his face and an object in his hand which Ramp could not identify. The other man was about five feet seven inches or five feet eight inches in height and also wore a bandanna. Ramp could not identify the offenders. The taller of the two men took Ramp's wallet containing $9 and both men went through his pockets. Later that evening Ramp identified his stolen wallet.

Ronald Zielke, an Oak Park policeman, was working in plainclothes on March 30, 1980. At about 7 p.m., he heard a report of the robbery in Ramp's garage. He was in his car about six blocks away. When Officer Zielke was one block from the scene, he saw a "beige" Cadillac with three men in it. He followed the car into an alley where it stopped near a street light. A man with a bandanna around his neck exited the Cadillac from the passenger side. He pointed a revolver at Zielke, who was 30 or 40 feet away, and fired five or six shots, the first of which struck the windshield. Zielke sat upright during the shooting. The man got back in the Cadillac which then left. In court, Zielke identified defendant Jones as the person who shot at him. Eventually the Cadillac was found abandoned. When Zielke heard that three suspects had been arrested, he went to the Oak Park police station where he saw defendant at the rear of the squadroom. At that time Zielke realized that he had seen defendant about one or two months before in the Oak Park police station and in the Maybrook courthouse.

Don and Zoe Minnoch, brother and sister, were walking home around 7 p.m. on March 30, 1980, when they heard a series of "bangs," like firecrackers, and then saw the Cadillac speeding through an alley. Zoe saw something thrown from the car. After talking with police who had responded to Officer Zielke's call for help, the children returned with the police to the alley where the Cadillac had passed by. Don found Ramp's wallet.

Thomas Stec, an Oak Park policeman, responded to Zielke's call for assistance. When Stec saw a garbage can that was overturned about two blocks from where the Cadillac was abandoned, he searched a nearby garage where he found the three suspects. In court Stec

identified Jones, Baylock and Haynie as the three suspects. A .38-caliber revolver was found in the garage about 15 feet from the defendants.

James Leahy, an evidence technician, administered gunshot residue tests to Baylock and Haynie but not to Jones because Jones had washed his hands. No residue was found on either Baylock's or Haynie's hands. Bullet fragments were removed from the back seat of Zielke's car and from under its hood. It was established that two of the fragments were fired from the revolver found in the garage. It was also established that the 1973 gold Cadillac was registered to Haynie. A fingerprint of Baylock's was lifted from a beer bottle found in the Cadillac.

Booker Haynie testified in his own defense and denied that he participated in any crime on March 30, 1980. Jones, then Baylock, drove his car that evening. Haynie fell asleep on the back seat because he was drunk. The trial judge commented outside the presence of the jury that Haynie appeared to be drunk during his testimony. Neither Jones nor Baylock testified.

On rebuttal, Officer Stec testified to a conversation he had with Haynie on March 30, 1980. According to Stec, Haynie was not intoxicated. Haynie stated that during the evening he woke up and the car was in the alley and Baylock and Jones had left. They returned and drove away at a high rate of speed. Jones said to stop the car. Jones jumped out and shortly thereafter Haynie heard some "pops." Jones got back in the car and said that he had stopped the person who had been following them. The jury was cautioned that this evidence was admissible only against Haynie. On cross-examination, Officer Stec admitted that he wrote a report of the incident in December 1980, eight months later.

At the close of trial, the jury found Haynie and Baylock not guilty, and Jones guilty of attempted murder. Defendant Jones was sentenced to 20 years and appeals his conviction.

 The first issue raised by defendant is whether the trial court erred in refusing to grant his motion for a severance. Before trial, defendant moved to sever because of antagonistic defenses, and at trial Officer Stec testified on rebuttal as to statements made by codefendant Haynie. Defendant argues that this testimony implicated him as the one firing the gun.

We reject defendant's contentions. Defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461, 463.) In seeking a separate trial, a defendant is

required to do more than simply move for severance. He must actively and specifically point out the antagonism of the defenses and so demonstrate the prejudice which will be suffered from a joint trial. (87 Ill. 2d 182, 189.) The decision to grant a separate trial is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. 87 Ill. 2d 182, 186.

In our opinion, Jones did not demonstrate prejudice in his pretrial motion. He merely stated that the codefendants were hostile and speculated that he might be prejudiced by statements made by Haynie. Because Jones offered no defense, the record shows no antagonism between Haynie's testimony and Jones' defense. (*People v. Lee* (1981), 87 Ill. 2d 182, 189.) Haynie testified that he could not recall what happened on the evening of the shooting because he was drunk. On rebuttal, Officer Stec testified to statements made by Haynie on the night of the shooting which impeached the latter's testimony. However, the jury was instructed that the statements could only be considered against Haynie. We conclude that the trial court did not abuse its discretion in refusing to grant defendant's motion for a severance.

Defendant raises two additional issues concerning Haynie's out-of-court statements. First, defendant claims he was denied the right to full and effective cross-examination because the statements implicated him in the crimes alleged and their prejudicial effect was not overcome by the limiting instruction. Defendant contends that it was impossible for him to cross-examine Haynie because the latter testified that he was drunk and asleep on the back seat of the car and could not remember anything he said. Defendant cites *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, and *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723, in support of his contentions.

In *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38, defendants alleged that their sixth amendment right to confront witnesses against them was violated. The appellate court stated:

> "Defendants correctly point out that in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Supreme Court held that testimony by a witness of an out-of-court statement by a co-defendant implicating the defendant violates the defendant's right of cross-examination secured by the confrontation clause of the sixth amendment. We note that a violation of the *Bruton* holding constitutes plain error in Illinois. (*People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577.) In a later case, however, the Supreme Court limited the

*Bruton* holding to cases where the declarant-defendant does not take the stand. (*Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723.) In *Nelson*, the co-defendant took the stand; denied making the statements implicating defendant; and testified favorably to the defendant concerning the underlying facts. The *Nelson* court reasoned that under these circumstances a defendant is denied neither the opportunity for cross-examination nor, in light of co-defendant's favorable testimony, the benefit of full and effective cross-examination. (*Nelson*, 402 U.S. 622, 629, 29 L. Ed. 2d 222, 228, 91 S. Ct. 1723, 1727.) The Illinois courts have followed the *Nelson* ruling in *People v. Brooks* (1972), 51 Ill. 2d 156, 281 N.E.2d 326, and *People v. Holtz* (1974), 19 Ill. App. 3d 781, 313 N.E.2d 234." (79 Ill. App. 3d 318, 326-27.)

In the instant case, Haynie took the stand and testified that he could not remember what he said. Defendant Jones had the opportunity to cross-examine Haynie but chose not to do so. We hold that Jones was not denied his constitutional right to confront witnesses against him.

■ Secondly, defendant claims that use of Haynie's out-of-court statements gave them substantive effect, that they were prejudicial hearsay introduced under the guise of impeachment, and that he was thus denied a fair trial. Again we reject defendant's argument. Evidence of prior inconsistent statements by a witness is admissible to impeach the witness' credibility. Such evidence is not admitted as proof of the truth of the facts stated by the witness, but to cast doubt on the testimony of the witness by showing his inconsistency, and the evidence is therefore not hearsay. *People v. Morgan* (1963), 28 Ill. 2d 55, 63, 190 N.E.2d 755, 759.

■ In the instant case, Haynie's statements were introduced to show that on the evening the crime occurred, Haynie could recall what had happened. The jury was instructed that this impeachment was not substantive evidence against defendant Jones. In our opinion, Officer Stec's testimony on rebuttal as to statements made by codefendant Haynie was properly admitted as impeachment by prior inconsistent statements.

■ Defendant next contends that the trial court erred in admitting Officer Zielke's pretrial and in-court identifications. Defendant states that Zielke's designation of Jones as his assailant when everyone else in the squadroom was a police officer was an unnecessarily suggestive identification. According to defendant, Zielke was a distraught victim who expected to see his assailant in the police station. Since he had seen Jones before in a police station and in a courtroom,

he identified Jones as his assailant because of unconscious transference.

Accidental confrontations do not vitiate an out-of-court identification where they are immediate, spontaneous, unprompted and positive. (*People v. Braxton* (1980), 81 Ill. App. 3d 808, 816, 401 N.E.2d 1062, 1068.) We have examined the record in this case and find nothing which indicates that Zielke was either improperly induced to make an identification or knew that defendant would be in the squadroom. In our opinion, Zielke's out-of-court identification was not unnecessarily suggestive and was properly admitted.

■■ Defendant argues that Zielke's in-court identification was tainted by the pretrial identification, thus rendering the in-court identification inadmissible. He claims that because Zielke had an insufficient opportunity to view his assailant and because he failed to give a description prior to the police station confrontation, the State would be unable to meet its burden of showing by clear and convincing evidence that the in-court identification was based on observations independent and uninfluenced by the improper identification at the police station.

Again we reject defendant's argument. The existence of an independent origin will validate an in-court identification even though there may have been a previous identification which was impermissibly suggestive. (*People v. Harrison* (1978), 57 Ill. App. 3d 9, 14, 372 N.E.2d 915, 919.) Zielke saw defendant under circumstances which allowed a positive identification to be made: There was a lighted street light above the car in which defendant was riding when he got out to fire at Zielke; defendant was two car lengths away and facing Zielke; and Zielke had seen defendant on two previous occasions. This, in our opinion, adequately establishes that there was a sufficient independent origin to support his in-court identification of defendant.

■■ Finally, defendant contends that he was not proved guilty beyond a reasonable doubt. He argues that the State failed to provide a motive, a credible eyewitness with a believable story, a proper identification or a fingerprint on the gun. In our opinion, the identification evidence was sufficient to support defendant's conviction. As stated above, Zielke's identifications of defendant were properly admitted. Where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under such circumstances as would permit a positive identification to be made. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, J., concurs.

PRESIDING JUSTICE ROMITI, dissenting:

Because I believe that the prosecution's introduction and use of a codefendant's statement deprived defendant of a fair trial I would reverse defendant's conviction and remand for a new trial.

As the majority correctly notes, in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, it was held that the use of a codefendant's out-of-court statements implicating the defendant violated the defendant's right of cross-examination as guaranteed by the confrontation clause of the sixth amendment. The *Bruton* court held that this was reversible error despite what they described as "clear" instructions to the jury to disregard the statements insofar as the defendant was concerned. The court held that despite these instructions there was a substantial risk that the jury utilized these statements in determining the defendant's guilt, stating that:

> "*** there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [Citations.] Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Bruton v. United States* (1968), 391 U.S. 123, 135-36, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1627-28.

The majority contends, however, that under *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723, no reversible error occurred because the codefendant took the stand. The *Nelson* court construed *Bruton* as holding that the right of confrontation is violated by the introduction of a codefendant's inculpatory hearsay statement only where the codefendant is unavailable at trial for full and effective cross-examination. In *Nelson* the codefendant testified at trial, denying having made the statements attributed to him and testifying at length and favorably to the defendant. Indeed, the codefendant's testimony substantially corroborated the defendant's exculpatory account.

In this cause the codefendant, Booker Haynie, did take the stand and either denied making or denied any recollection of making the inculpatory statements attributed to him. However his account of the occurrence effectively precluded any meaningful cross-examination. He professed to have been in a drunken stupor throughout most of the occurrence. The few details he did recall were inculpatory for the defendant: thus he named defendant as being in the car that was linked to the offenses at issue. Moreover the witness, by the trial court's own evaluation, was apparently intoxicated during his testimony. Under these circumstances it cannot reasonably be said that the prejudice arising from the introduction of the statement was alleviated by the opportunity to cross-examine an inebriated witness who claimed not to recall most of the occurrences at issue.

I would also note that contrary to the majority's assertion the defendant, in seeking a severance prior to trial, did much more than merely state the codefendants were hostile or merely speculate that statements made by Haynie might prejudice him. The trial court was informed that at the preliminary hearing it had been disclosed that both codefendants made statements to the police indicating that defendant had shot at Officer Zielke and had committed the armed robbery. The prosecution would only represent to the court that they would not use those statements in their case-in-chief yet despite this the court held that no severance was required.

In opening argument to the jury Haynie's lawyer stated that Haynie would testify that he was drunk and asleep in the back seat of the car and only awoke and ran with the defendants when the car came to a screeching halt and he was told to run. On the basis of these representations the defendant renewed his motion for a severance (after the testimony of the first State witness). Defendant's counsel informed the court that the prosecution would use the statements of Haynie in rebuttal and the prosecution in response specifically refused to rule out this possibility. The court still refused to grant the severance motion.

As we stated in *People v. Clark* (1959), 17 Ill. 2d 486, 490, 162 N.E.2d 413, 416:

> "*** where the circumstances are such that a defendant will be deprived of a fair trial if jointly tried, a severance must be granted. [Citations.] *** [W]e have repeatedly held that when a motion for separate trial is based on the fact that a codefendant's confession implicates the moving defendant, a severance should be granted unless the prosecution declares that the admissions or confessions will not be offered in evidence at time

of trial, or if offered, that there will be eliminated therefrom any and all reference to the party applying for a severance."

In this cause no severance was granted. Nor was the prosecution required to forswear all use of the statements or at least all references to the defendant. The result was that the statements were introduced to the prejudice of the defendant in a case where the prosecution otherwise would have had to rely almost exclusively on an identification of the defendant made by a police officer who had viewed the defendant only briefly, at night and while under fire. And although the statements were introduced under the guise of impeachment, their devastating impact on the defendant and the extensive manner in which the prosecution utilized them both in cross-examination of Haynie and on rebuttal indicates that the prosecution was improperly attempting to make substantive use of this evidence against the defendant. (*People v. Rudolph* (1977), 50 Ill. App. 3d 559, 365 N.E.2d 930.) Under these circumstances I would also hold that the denial of defendant's severance motion was an abuse of discretion and constituted reversible error.