THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAIN HOLLOWAY *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—88—2971, 1—88—2995 cons.

Opinion filed July 24, 1991.—Rehearing denied March 12, 1992.

Randolph N. Stone, Public Defender, of Chicago (Timothy J. Leeming, Assistant Public Defender, of counsel), for appellants.

Jack M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and Thomas J. Byrne, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendants Dwain Holloway and Ronald Rolark were convicted of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2) in a bench trial. Holloway was sentenced to 14 years' imprisonment, and Rolark was sentenced to eight years. On appeal, Holloway argues that (1) he was not proven guilty beyond a reasonable doubt where no gun was recovered and testimony indicating that he used a gun was incredible, impeached, contradicted, and should have been disregarded; (2) he was denied a fair trial where evidence was introduced of a prior incident involving what appeared to be a gun; and (3) the admission of incriminating hearsay testimony by Rolark that Holloway had a gun violated Holloway's sixth amendment right to confront witnesses against him. Rolark argues that the State failed to prove beyond a reasonable doubt that he had the specific intent to assist in the crime committed by Holloway. We affirm.

At approximately 8 p.m. on January 5, 1987, defendants entered TNT Subs and Gyros Restaurant located at 8637 South Ashland Avenue, Chicago, Illinois. Holloway began yelling for some food. The cashier told him that he would have to wait in line. Defendants spoke briefly to each other and then Holloway again began to demand food. The cashier again told Holloway that he was going to have to wait in line. Holloway pulled out a gun and pointed it at the cashier. The cashier ran away from the register, and Holloway approached the register.

Timothy Koutsis was working as a cook at TNT Subs and Gyros Restaurant. He observed the disturbance and grabbed a shotgun which was located on the back counter, pointed it at Holloway and Rolark, and told Holloway to put the gun down or that he would shoot him. Rolark pleaded with Mr. Koutsis not to shoot them and pulled Holloway towards the front door, where they exited and ran away together in the same direction.

About 30 minutes later, defendants entered the Burger King Restaurant (Burger King) at 1818 West 87th Street, Chicago, Illinois, which is located approximately four blocks west of TNT Subs and Gyros Restaurant. Yvette Burbridge was the manager on duty at that time, and Clarence Wilkerson and Linda Jones were working behind the counter serving food. At that time, there were no customers in the restaurant.

Rolark asked Ms. Burbridge where the men's room was located. After being told where it was, Rolark pushed open the door to the employees' room. Ms. Burbridge told Rolark that he could not go into the employees' room. Rolark then went into the men's room. Upon exiting the men's room, Holloway asked Rolark what he wanted to eat. Rolark told Holloway to get him anything, and Holloway went up to the front counter presumably to order some food. Rolark sat down with Ms. Burbridge's sister and her friend at a table and began to engage with them in "some kind of wild conversation."

Holloway placed an order for a cheeseburger with Linda Jones. Ms. Jones went to the back kitchen to wash dishes, and Clarence Wilkerson began to prepare the food. While preparing the food, Mr. Wilkerson observed Holloway step towards the end of the counter and intermittently look into the dining area where Rolark was talking to Ms. Burbridge, her sister and their friend. Mr. Wilkerson then carried the food out to the front counter, where he called out Holloway's order.

At this point, Mr. Wilkerson observed Holloway engaging in strange behavior, including repeating "Cheeseburger. Cheeseburger" and "Ninety-eight cents. Ninety-eight cents," and called Ms. Jones to the front counter to observe Holloway's behavior. Before Ms. Jones arrived at the front counter, Holloway jumped over the counter and placed a gun to the side of Mr. Wilkerson's head and demanded that he open the cash register. At that point, Ms. Burbridge saw Holloway on the employees' side of the counter holding a gun. She ran into the employees' room and called the police.

When the register was opened, Holloway removed approximately $60, and hopped back over the counter and ran outside. Holloway

dashed around to the side of the restaurant and started banging wildly on the window in order to get Rolark's attention. The window shattered, and Holloway sprinted away down a nearby alley. Rolark then proceeded up to the front counter and asked for the food. Rolark took the food and walked out the front door.

As Rolark was walking away through Burger King parking lot, the police arrived on the scene and were informed by Burger King employees that Rolark was one of the two offenders. The police immediately arrested Rolark. Holloway was observed a short distance away by police. When Holloway spotted the police car, he ran down an alley, hopped over a fence, and ran into a basement stairwell. The police ordered Holloway to exit the stairwell and placed him under arrest. The police recovered $55 in currency and approximately $6 in coins. A gun was not recovered either on Holloway's person or at the scene.

Holloway first contends that he was not proven guilty beyond a reasonable doubt where no gun was recovered and testimony indicating that he used a gun was incredible, impeached, contradicted, and should have been disregarded. We disagree.

■■ The reviewing court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461, 472, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) On review, the trial court's judgment will not be set aside unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319.

Holloway argues that he used a plastic gun during the incident at the TNT Subs and Gyros Restaurant and denies using a gun at all during the robbery of Burger King. Holloway claims that Mr. Wilkerson's testimony is unreliable because Mr. Wilkerson could not remember what hand Holloway held the gun in and was unclear from where Holloway pulled the gun. Additionally, Holloway asserts that Mr. Wilkerson's testimony and Mr. Koutsis' testimony are inconsistent because Mr. Wilkerson testified that the .45 caliber pistol was brown and Mr. Koutsis testified that the .45 caliber pistol was black. Finally, Holloway argues that because no gun was recovered, the State did not prove beyond a reasonable doubt that Holloway used a gun while committing the robbery.

■ A careful review of the record in a light most favorable to the prosecution demonstrates that a rational trier of fact could have found Holloway guilty of armed robbery beyond a reasonable doubt. There is nothing unsatisfactory, improbable or implausible about the evidence presented in this trial. The State presented the clear and consistent testimony of Mr. Wilkerson, which was corroborated by two other witnesses who testified that they saw Holloway with a gun. Mr. Wilkerson testified that Holloway placed what he described as a brown .45 caliber pistol to the right side of his head and told him that he better figure how to get the money out of the cash register. Ms. Burbridge testified that she saw Holloway on the employees' side of the counter holding a gun to Mr. Wilkerson's head. Additionally, Mr. Koutsis testified that he saw Holloway pull out a gun and point it at the cashier only 30 minutes earlier at TNT Subs and Gyros Restaurant. Mr. Koutsis observed Holloway's gun from about 10 to 15 feet away. Mr. Koutsis testified that he was familiar with guns and frequently handled them. He testified that the gun appeared to be a .45 caliber pistol that was dark in color. Mr. Koutsis was positive that Holloway was holding a real gun.

We conclude that the State proved beyond a reasonable doubt that Holloway used a gun when committing the robbery of Burger King. While Holloway argues that he could not properly be convicted of armed robbery when the gun was not recovered, this contention is without merit. See *People v. Fitzgerald* (1988), 171 Ill. App. 3d 218, 524 N.E.2d 1190.

Holloway's second argument is that he was denied a fair trial because evidence was introduced of a prior incident involving what appeared to be a gun. We disagree.

■ Evidence of other crimes committed by a defendant may be admitted to prove *modus operandi*, motive, intent, state of mind, absence of an innocent frame of mind, identification of a weapon, or existence of a common scheme, design, or plan. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484-85, 485 N.E.2d 1292, 1296.) Evidence of other crimes committed by defendant may be admitted if relevant to establish any material question other than propensity of the defendant to commit a crime. (*Kimbrough*, 138 Ill. App. 3d at 484, 485 N.E.2d at 1296.) The determination of the admissibility of evidence rests primarily in the discretion of the trial court, and its decision will not be reversed unless clear abuse is shown. *People v. Enis* (1990), 139 Ill. 2d 264, 281, 564 N.E.2d 1155, 1161.

■ At trial, the judge allowed the testimony of Mr. Koutsis regarding the prior incident at TNT Subs and Gyros Restaurant, stating

that it could be used for any purpose other than to show propensity to commit crime. We conclude that Mr. Koutsis' testimony that Holloway brandished a gun at TNT Subs and Gyros Restaurant only 30 minutes prior to the robbery at Burger King was not improperly introduced for the purpose of showing the propensity of this defendant to engage in criminal activity, but rather was properly introduced to show intent, the existence of a weapon, *modus operandi,* and a common scheme or plan. Accordingly, we hold that the trial court properly admitted the testimony of Mr. Koutsis pertaining to the incident occurring 30 minutes earlier at TNT Subs and Gyros Restaurant.

■ Holloway's third argument is that the admission of incriminating hearsay testimony by Rolark that Holloway had a gun violated his sixth amendment right to confront witnesses against him. This contention is without merit.

In *Bruton v. United States* (1968), 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479, 88 S. Ct 1620, 1622, the Supreme Court held that in a joint trial the admission into evidence of one defendant's confession which implicates the second defendant constituted prejudicial error even though the trial court gave clear and concise instructions that the confession could be used only against the defendant who confessed and must be disregarded with respect to the other defendant. In *Nelson v. O'Neil* (1971), 402 U.S. 622, 629-30, 29 L. Ed. 2d 222, 228, 91 S. Ct. 1723, 1727, however, the Supreme Court limited the holding in *Bruton* to cases where the declarant-defendant does not testify at trial. Illinois has consistently applied the *Nelson* rationale for limiting the *Bruton* rule. See *People v. Jones* (1983), 116 Ill. App. 3d 233, 451 N.E.2d 1358; *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.

At trial, Officer James Cloonan was asked on direct examination what Rolark said during a conversation they had after Rolark's arrest. Officer Cloonan responded, "[Rolark] told me that he never had the .45, that Holloway had the .45." Holloway failed to object at trial.

In this case, Rolark testified in his own defense, giving Holloway the benefit of full and effective cross-examination. We, therefore, hold that Officer Cloonan's hearsay testimony which corroborated an eyewitness' testimony that Holloway had a gun during the robbery at Burger King did not violate Holloway's sixth amendment right to confront witnesses against him.

Rolark contends that the State failed to prove beyond a reasonable doubt that he had the specific intent to assist in the crime committed by Holloway. We disagree.

■ In order to establish a defendant's legal accountability for a crime, the State must prove beyond a reasonable doubt that the accused solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense, that such participation occurred either before or during perpetration of the crime, and that this participation was with concurrent specific intent to promote or facilitate commission of the offense. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2; *People v. Brown* (1990), 197 Ill. App. 3d 907, 915-16, 557 N.E.2d 199, 205.) The key element in accountability is affirmative conduct on the part of an accomplice that in some way aids, encourages, or incites another person to commit an illegal act. (*People v. Powers* (1920), 293 Ill. 600, 602-03, 127 N.E. 681, 682.) A person may be found guilty under an accountability theory if he either acts as a decoy or distracts the victim. (See *People v. Perruquet* (1988), 173 Ill. App. 3d 1054, 527 N.E.2d 1334; *People v. Williams* (1987), 157 Ill. App. 3d 496, 510 N.E.2d 445.) Although one's presence at the scene of a crime is insufficient to establish legal accountability for commission of an offense, one may aid or abet without actively participating in the overt act. (*People v. Grice* (1980), 87 Ill. App. 3d 718, 725, 410 N.E.2d 209, 215-16.) In addition, words of agreement are not necessary to demonstrate a common purpose to perpetrate a crime for purposes of legal accountability since common design can be inferred from circumstances surrounding the commission of the unlawful act. *Grice*, 87 Ill. App. 3d at 725, 410 N.E.2d at 216.

■ Here, defendants walked into Burger King together immediately following the incident at TNT Subs and Gyros Restaurant. Ms. Burbridge testified that as defendants entered the Burger King, Rolark attempted to enter the employees' room. Immediately thereafter, Rolark had a brief discussion with Holloway and went to the back patio of the restaurant. Ms. Burbridge testified that Rolark was attempting to distract her and her sister and their friend by engaging them in "some kind of wild conversation." After Holloway had removed the money from the cash register, he exited Burger King, ran around the side of the store and banged wildly on the window to get Rolark's attention. While banging on the window, it broke. Rolark then proceeded to the front of the store, took the food that had been ordered by Holloway and exited the store. Additionally, Ms. Burbridge's sister and friend stated that Rolark had something to do with the robbery, and so informed police. We conclude that the evidence establishes beyond a reasonable doubt that Rolark had the specific intent to aid or abet in the armed robbery of Burger King by acting as a decoy or distraction to the employees and customers of the

restaurant. We therefore hold that the trial court did not err in finding Rolark guilty of armed robbery pursuant to an accountability theory under section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 5—2).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

CERDA, P.J., and GREIMAN, J., concur.