THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDREW MAXWELL, Defendant-Appellant.

First District (1st Division)   No. 1—91—0937

Opinion filed June 6, 1994.

324

Rita A. Fry, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Andrew Maxwell, was found guilty of two counts of armed robbery and one count of attempted armed robbery, and sentenced to consecutive prison terms of 60 years, 30 years, and 15 years for each count, to be served concurrently with a death sentence previously imposed for an unrelated murder conviction. (See *People v. Maxwell* (1992), 148 Ill. 2d 116, 592 N.E.2d 960, *cert. denied* (1992), 506 U.S. 977, 121 L. Ed. 2d 377, 113 S. Ct. 471.) On appeal, defendant contends that: (1) the trial court erred in admitting evidence of other crimes; (2) the trial court erred in admitting a police officer's testimony regarding a complainant's prior consistent statements; and (3) his consecutive sentences were excessive. For the following reasons, we affirm the judgment of the trial court.

The following facts are relevant to this appeal. At trial, James Ballinger testified on behalf of the State that on September 13, 1985, he lived at 8430 South Wabash, Chicago. At approximately 5:45 p.m., he left his house to attend a party. At 11:30 p.m., Ballinger returned home to find that the back window of the house had been broken and the screen cut. When he entered the house, he found that the house had been ransacked and clothing and personal belongings strewn about the floor. Among the things Ballinger discovered missing were two loaded pistols, a .38-caliber Colt and a .22-caliber Iver Johnson revolver. The prosecutor showed Ballinger a .22-caliber revolver recovered by police, and Ballinger identified it as his by comparing the serial number on the weapon to the serial number on his firearms registration.

Chicago police evidence technician John Butler testified that on November 12, 1986, he took fingerprints from defendant. Chicago police evidence technician Lawrence Krause testified that defendant's fingerprints matched those taken from a piece of broken glass recovered from the Ballinger home.

Jorge Vargis testified that on November 8, 1986, he lived at 11126 Avenue N. That evening his wife told him that a child saw a gun in their backyard. Vargis searched the backyard with a flashlight, found the gun, and called the police.

Police officer John Babusch testified that on November 8, 1986, he interviewed Vargis at his home. The officer retrieved from Vargis a fully loaded, bluesteel .22-caliber revolver with a brown handle. Officer Babusch subsequently learned that the gun belonged to Ballinger.

Dmitar Marich testified on behalf of the State that he is 65 years old. On November 3, 1986, Marich arrived home from work at 11:10 p.m. and parked his car in his garage. He got out of his car and noticed two black men in the alley. One of the men, whom Marich identified as defendant, approached Marich, held a gun to the left side of Marich's head, and stole $20 from Marich's shirt pocket.

Terrence Wilson testified that on November 3, 1986, he returned to his home at 10440 Troy, Chicago, at approximately 8:50 p.m. As he was parking his black, Chevy Monte Carlo in his garage, he saw three black men walking north down the alley toward his garage. Wilson stated that the area was well lighted at the time. Wilson identified the three men as defendant, Jerry Thompson and Gregory Howard. The three men entered the garage; one man held a gun to Wilson's head and told Wilson to give him the keys to his car. Then, one of the others robbed Wilson, taking approximately $90 from his pockets. The other two men got into the car, and they pulled the car

out of the garage. The gunman then exited the car, returned to the garage and told Wilson to lie on the ground. Wilson did so, and the gunman kicked Wilson in the hip area. At approximately 3 a.m., on November 4, 1986, Wilson identified defendant from a lineup at the police station.

Chicago police officer Michael Kuemmeth testified that on the evening of November 3, 1986, he interviewed Jose Flores at 10652 Avenue B, Chicago. Officer Kuemmeth stated that Flores told him that he was returning home from work that evening when his car was cut off by three men in a black Chevy Monte Carlo, that they followed him to his home, that one man, approximately 19 or 20 years old, 5 feet 9 inches tall and wearing a brown, waist-length, leather jacket, approached Flores with a handgun and said "don't move or I'll blow your head off." Officer Kuemmeth stated that Flores relayed to him that he ran to the entrance of his apartment and called the police.

Jose Flores testified that on November 3, 1986, at 11 p.m., he was driving home from work, eastbound on 112th Street. As he crossed Ewing Avenue, his car was cut off by a black Monte Carlo that pulled in front of him. Flores noticed that there were three black males in the Monte Carlo and that the passenger in the back seat continuously turned around to look at Flores. Flores signalled to turn at Avenue E, but the Monte Carlo cut him off, making a U-turn directly in front of him. The Monte Carlo continued to move at approximately 20 to 25 miles per hour.

When Flores approached his street, he parked on the east side of the street, across the street from his house. He walked across the street, and as he reached the curb on the west side of the street, he saw three black males approaching him from around the corner, approximately 60 to 70 feet away. The three men tried to circle Flores, and Flores identified defendant as the one who said to him, "Hold it, mother fucker or I'll shoot." Flores saw defendant pointing a black automatic pistol at him. Flores hit the gate and ducked, then pushed the hallway door open and entered his house. Flores told his father what had happened, then called the police. Later, Flores identified all three assailants from a police lineup.

Chicago police officer Lawrence Alonso testified that on November 3, 1986, he interviewed a robbery victim named Mr. Medrano at 10800 South Avenue J. While interviewing Medrano, the officer received a radio call to investigate a robbery at 10904 South State Line Road, and interview Marich. When the officers arrived at that location, some bystanders informed them that several perpetrators had driven northbound in a black car on Avenue B from 109th Street.

The officers drove in that direction and spotted defendant and the others in a black Chevy Monte Carlo heading westbound on 109th Street. After a chase, the driver of the Monte Carlo lost control, hit a fence and crashed into a garage. The three men jumped out of the car and ran, and the officers chased them on foot, eventually apprehending Thompson and arresting him.

Chicago police officer Gerald Lyons testified that on November 3, 1986, shortly after 11 p.m., he and his partner responded to a call about several armed robberies on the south side of Chicago. Officer Lyons received a radio description of one person as a male black, wearing a dark leather jacket, between 5 feet 9 inches and 6 feet tall. Officer Lyons patrolled the vicinity and saw Gregory Howard at Ewing Avenue and 105th Street, crouched by a stairway leading into a restaurant, his face to the wall. Officer Lyons and his partner searched and arrested Howard.

At approximately 1:45 a.m. on November 4, 1986, Officer Kuemmeth and his partner saw defendant walking down the street at 111th Avenue and O Street. As the officers approached defendant, he turned and ran through a yard. The officers pursued him on foot, finally catching him crouched in a recessed stairwell on the outside of a house, where they arrested him.

The State rested, and the trial court denied defense counsel's subsequent motion for directed verdict. After closing arguments, the jury found defendant guilty of two counts of armed robbery, and one count of attempted armed robbery. The trial court denied defendant's motion for a new trial, and following a hearing in aggravation and mitigation, the trial court sentenced defendant to consecutive terms of 60 years for one count of armed robbery, 30 years on the second count of armed robbery, and 15 years on the count of attempted armed robbery, to run concurrently with defendant's death sentence imposed for an unrelated murder conviction. Defendant's timely appeal followed.

■ Initially, defendant contends that the trial court erred in admitting evidence concerning the robbery of Mr. Medrano. At trial, Officer Alonso testified that while he interviewed a robbery victim named Medrano, he monitored a call regarding the robbery of Marich. Defendant argues that this testimony was improper, because it permitted the jury to infer that Medrano was another victim of defendant. In support, defendant cites *People v. Watson* (1977), 55 Ill. App. 3d 564, 371 N.E.2d 113, for the proposition that every defendant has the right to expect that his fate will be fixed with reference only to the circumstances of the crime with which he is charged.

The record shows that defendant has waived this issue for failure

to both object at trial and his post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Defendant also contends that the trial court improperly admitted evidence of the Ballinger burglary. Defendant argues that "the evidence and emphasis on this residential burglary was excessive."

The State responds that evidence of other crimes committed by a defendant may be admitted to prove the identification or existence of a weapon. *People v. Holloway* (1991), 225 Ill. App. 3d 47, 587 N.E.2d 1027.

■ The record shows that two guns were taken from Ballinger's home in a burglary on September 13, 1985, including a .22-caliber pistol. Defendant's fingerprints were found on broken glass at Ballinger's home. Marich, Flores, and Wilson testified that they were held up or threatened at gunpoint by defendant on November 3, 1986. Vargis testified that he found a gun in his backyard on November 8, 1986, and subsequent testimony revealed that gun was registered to Ballinger. Thus, the testimony relating to the Ballinger burglary was proper to tie up the crime spree and establish the identification of the weapon used in the crimes charged.

Next, defendant contends that the trial court improperly elicited from Officer Kuemmeth Flores' statement regarding his attempt robbery. The record discloses the following exchange at trial:

"PROSECUTOR: And during this conversation, did he relate what had happened?

KUEMMETH: Yes, sir.

PROSECUTOR: What did he tell you?"

Defense counsel objected to this question on the basis of hearsay. The trial court ruled as follows:

"THE COURT: Well, he may first give the testimony, assuming Mr. Flores is going to testify, so as to possibly corroborate what Mr. Flores says.

And then secondly, he may relate the description given by Mr. Flores.

So, you may answer the question."

Kuemmeth then testified that on the evening of November 3, 1986, he interviewed Flores, and that Flores told him that he was returning home from work that evening when he was cut off by three men in a black Chevy Monte Carlo, that they followed him to his home, that one man, approximately 19 or 20 years old, 5 feet 9 inches tall and wearing a brown, waist-length, leather jacket approached Flores with a handgun and said, "don't move or I'll blow your head off." Officer Kuemmeth stated that Flores relayed to him that he ran to the entrance of his apartment and called the police.

■ Defendant admits that he failed to properly preserve this argument for review, but argues that this court may review this issue as plain error, because Kuemmeth's testimony improperly bolstered Flores' credibility as a witness. *People v. Smith* (1985), 139 Ill. App. 3d 21, 31, 486 N.E.2d 1347, 1354.

The State responds that defendant's argument is waived for failure to preserve it for review (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124) and that because the evidence was not closely balanced, the issue should not be reviewed as plain error.

We find that defendant has waived this argument for review. Nevertheless, admission of this evidence was harmless under the circumstances, where the record shows that Flores appeared at trial and testified to the identical facts stated by Officer Kuemmeth, and where the evidence of defendant's guilt for the crimes charged was overwhelming.

Finally, defendant contends that the trial court erred in imposing consecutive sentences. The record shows that the trial court sentenced defendant to an extended term of 60 years for the armed robbery of Marich, 30 years for the armed robbery of Wilson, and 15 years for the attempted armed robbery of Flores, to be served consecutively. Citing *People v. Gray* (1984), 121 Ill. App. 3d 867, 872, 460 N.E.2d 354, 357, defendant argues that consecutive sentences are rarely appropriate and must be imposed sparingly.

Section 5—8—4 of the Unified Code of Corrections (Corrections Code) provides:

"(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State ***, the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury ***, in which event the court shall enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court." Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(a).

■ The record shows that consecutive sentences are appropriate in the present case under section 5—8—4(a) of the Corrections Code. The trial court found that while the three charges brought against defendant were not separately brought, and were unified for the purposes of consolidation in a single trial, defendant's criminal

activities were not a single course of conduct, but were rather "three different events at different times, at different places." Thus, the trial court had the discretion to impose consecutive sentences.

We find that defendant's sentences are not excessive. Defendant was convicted of two counts of armed robbery and one count of attempted armed robbery. Armed robbery is a Class X felony, punishable by a term of imprisonment of not less than 6 years and not more than 30 years. (Ill. Rev. Stat. 1987, ch. 38, pars. 18—2(b), 1005—8—1(3).) However, a sentence for armed robbery may be extended where the defendant has committed the offense against a person 60 years of age or older. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(8).) The record indicates that Marich was over 60 years old when defendant committed armed robbery against him. An extended term for armed robbery shall be not less than 30 years and not more than 60 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(2).) Thus, an extended term of 60 years for the armed robbery of Marich is an appropriate sentence under the Corrections Code.

In addition, defendant's sentence of 30 years for the armed robbery of Wilson and 15 years for the attempted armed robbery of Flores are well within the statutory guidelines. Attempted armed robbery is a Class 1 felony, punishable by a sentence of not less than 4 years and not more than 15 years. (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(c)(2), 1005—8—1(4).) We therefore find that defendant's sentences are appropriate.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

O'CONNOR and MANNING, JJ., concur.